CONSTANCE HOPE WINTER, Appellant, v. NICHOLAS WINTER, Appellee.

**PARENT AND CHILD:** Surviving Parent—Presumption. The law
1    indulges a *strong* presumption that a surviving parent has a legal right to the custody and control of his or her child—a presumption not overcome by the fact that he or she allowed the child, during the period of tender infancy, and under circumstances of distressing necessity, to be cared for by others.

**HABEAS CORPUS:** Scope of Review. An appeal in habeas corpus
2    proceedings will not be reviewed *de novo.*

**COSTS:** Wrongful Conduct of Prevailing Party. The wrongful con-
3    duct of the party prevailing in both the trial and appellate courts in habeas corpus proceeding, may justify the taxation of all costs to such wrongdoer.    (See Secs. 3853, 4459, Code, 1897.)

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

FEBRUARY 8, 1918.

REHEARING DENIED JUNE 27, 1918.

THIS is a habeas corpus proceeding, involving a controversy over the custody of a child.    The defendant is the father of the child.    The trial court awarded to him the custody.    The petitioner, by her next friend, Ella Buchanan, has appealed.—*Affirmed.*

*Geo. F. Heindel, L. C. Mitchell,* and *Chester W. Whitmore,* for appellant.

*Roberts & Webber* and *Newton W. Roberts,* for appellee.

EVANS, J.—I. Constance Hope Winter was born in May, 1913. She was born into the arms of a dying mother, whose life went out as that of the babe came in. The other sur-

viving members of the family were the
father (defendant herein) and a daughter,
Helen, aged about fourteen. Constance was
prematurely born, and weighed, at birth,
but three pounds. The only hand of rescue held out to the
helpless waif was that of Ella Buchanan, the sister of the
mother, and the plaintiff's next friend herein. She offered
to take it into her home and heart, and no one contended with
her. She took it and nurtured it. Its life hung by a thread
for many months. Night and day, she devoted herself to it
with beautiful fidelity. It would be difficult to exaggerate
the magnitude of her unselfish devotion. The father con-
tributed the paltry sum of $2.00 per week as a contribution
to expenses incidental to such care; and even this, he con-
tributed as guardian of the child, out of property inherited
from her mother. It will be quite as convenient for us to
refer to Ella Buchanan as the plaintiff herein. She is such,
in the sense that she asks the continuing custody of the little
life which her love had saved. On May 15, 1916, the father
stealthily took the child from the home of plaintiff, intending
thereby to assert his own right of custody thereof. Hence
this action. The father has no home for the present custody
of the child. He has lived alone in his own home upon a
farm near the city since the death of his wife; and to say
the least, he is not gifted as a housekeeper. Neither has he
shown any aptitude in holding the affection of his older
daughter. She, too, made her home with the plaintiff for
two years prior to the beginning of this proceeding. The
plaintiff is an unmarried lady, 46 years of age, and is a
professional nurse. She has a permanent position in such
occupation, which yields her an income of $700, and has a
home and some other property. On the other hand, her pro-
fessional employment is quite exacting, and takes her time
from 8 A. M. until 5 P. M., every week day. The purpose
of the defendant, in taking the child from the custody of the

1. PARENT AND
CHILD: sur-
viving parent:
presumption.

plaintiff, was and is to have her reared by his own sisters, who are known in this record as Rose and Mary Winter. These ladies are also unmarried, and are 55 and 59 years of age, respectively. They have a fine home, and are well to do, and are ladies of excellent character. The child has been in their care and custody since she was taken by the father, in May, 1916. One of the grating circumstances in the situation is the fact that these ladies had barely, if ever, seen the child, and therefore had no personal affection for it. They have been moved to their undertaking in the matter solely from a sense of higher duty for the best interests of the child as they conceive them, and not from any impulse of personal warmth or attachment. Though they lived but a short distance from their brother's home, both before the death of his wife and ever since, there was no social intercourse between the two families. Up to the time of the trial, they had not made the personal acquaintance of their brother's older daughter.

The disputed questions in the case are purely fact questions. The case is not triable *de novo* on appeal. In such a contest, the father, as the only surviving parent, starts with a very strong presumption in his favor. 2. HABEAS CORPUS: scope of review. The fact that his situation was not suitable to take the earlier care of the new-born, and that he had to surrender it to tenderer hands than his own, is not conclusive against him. The best of fathers could be thus situated. Much evidence was introduced on both sides, pro and con, as to this father's fitness and suitability for his parental privilege, having due regard to the best interests of the child. It is pathetic enough that difference of religious faith is a strong stimulus to the zeal of the contending affections: the plaintiff and the deceased mother being Protestant, and the defendant and his sisters being Catholic. The issue of the contest, therefore, will determine the faith in which the child will be reared. We can-

not, of course, be guided or influenced by this difference of religious views, further than to recognize that it emphasizes somewhat the right of the parent to have the child reared in his own religious faith, notwithstanding that the deceased mother desired it otherwise. The trial court found the issue with the defendant. The finding is not without substantial support in the evidence, even though it were true that a contrary finding would have had better support.

It is highly desirable that the status of the child be fixed as quickly as possible, and that it be disturbed thereafter as little as possible. Even if it were our duty to try the case de novo, and even though we should have been better satisfied with a contrary finding, we should hestitate to disturb the present attachments of the child, except under a clear preponderance of the evidence. There is one counterweight which operates against the plaintiff, and which should be mentioned only in all kindliness: that is, that the exactions of her professional duties would make it impossible for her to be at home with the child during the working hours of the day. This is a circumstance of considerable importance.

Upon the record before us, we think that we would not be justified in interfering with the finding of the trial court. If the degree of approving recognition due the plaintiff for her three years of service and self-denial could be the criterion of our judgment, we could not fail to find in her favor. But such is not the criterion permitted to us; and judgment must fall with a grim disregard of the tenderness that softened the bed of a babe, and both blessed and broke, perchance, the heart that gave it. To the defeated plaintiff, be it said: "Well done, thou good and faithful."

II. We think that no costs should be taxed to Ella Buchanan in either court. The action of the defendant in taking the child by stealth was blameworthy and cruel. In

view of the delicate condition of the child,

**3. Costs: wrong-ful conduct of prevailing party.** and the fact that it had been much afflicted with digestion trouble, the extreme solicitude of the plaintiff was reasonable, and consistent with her past fidelity. By the wrongful act of the defendant, she was confronted with an emergency, and she began this proceeding on the same day. It has been prosecuted solely for the benefit of the child, and in defense of its best interest, as it appeared to her, in the best of faith. Let the taxable costs in both courts be taxed to the defendant. On this condition, the order entered below is—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.