[FILE No. 6460.]

ARTHUR M. NELSON, Plaintiff, v. MABEL MYRTLE ECK-LUND, Defendant.

(283 N. W. 273.)

Opinion filed December 31, 1938.

*F. E. McCurdy,* for plaintiff.

*George S. Register and Hyland & Foster,* for defendant.

BURR, J. The plaintiff seeks to review the proceedings wherein his minor daughter was adopted by the defendant. The daughter was born in March 1930. The mother of the child died in April 1934 and thereafter, with the consent of the father, the child has been in the custody of the defendant.

The record shows that in January 1933 the plaintiff was adjudged insane by the commissioners of insanity and committed to the State Hospital, discharged in May, recommitted in December, paroled in April of 1935, and finally discharged in March 1936. It is conceded that no guardian of the plaintiff had ever been appointed.

In May 1935 the defendant petitioned the district court for leave to adopt the minor, alleging that the father was insane and had "been

judicially established as such by the commissioners of insanity of said Burleigh county."

In accordance with § 4446 of the Supplement, notice of the petition for adoption was given to the board of administration and the board recommended the granting of the petition.

The district court on June 20, 1935 adjudged and decreed "that Arthur M. Nelson, the father of said child, is hereby deprived of all legal rights as respects the said Ardys June Charlotte Nelson, a minor, and said minor is hereby declared and decreed to be free from all obligations as to obedience and maintenance respecting her said natural father Arthur M. Nelson."

The plaintiff was not a party to these proceedings. No notice was served upon him. He did not consent to the adoption; in fact, it is clear from the record he knew nothing of the proceedings until January 1936. On learning of the adoption he sought to vacate the decree, but the district court refused to entertain his motion. In Nelson v. Ecklund, 67 N. D. 140, 270 N. W. 347, the remedy by appeal was held not applicable.

The defendant contends: first, that "Plaintiff, is not a proper party plaintiff herein;" second, that this court has not original jurisdiction in this matter; third, "that the District Court of Burleigh County, North Dakota, had jurisdiction both of the parties and subject-matter in the adoption proceedings involved herein, and that therefore the petition does not set out facts sufficient to warrant the relief prayed for in said petition."

The writ of certiorari is not a writ of right, except in cases where it is made so by statute (People ex rel. Sheridan v. Andrews, 52 N. Y. 445, 448); but it rests in the sound discretion of the court to grant or refuse it, upon the circumstances of the case. Cofman v. Ousterhous, 40 N. D. 390, 168 N. W. 826, 18 A.L.R. 219. Neither does the writ lie where there is an appeal or other speedy and adequate remedy. Schafer v. District Ct. 21 N. D. 476, 131 N. W. 240.

The contention that the plaintiff is not a proper party to these proceedings appears to be based upon the interpretation of § 8446 of the Compiled Laws which provides that the application for writ of certiorari "must be made on affidavit by the party beneficially interested." The defendant contends that if the plaintiff was not a party

to the adoption·proceedings, he is not a "party beneficially interested" therein and so can not apply for the writ.

In addition, the defendant herein asserts that the district court had jurisdiction over the father and his rights, not only because of the action of the board of administration in giving its consent, but also because, after the decree had been entered, the father made a special appearance, asked that the decree be set aside and he be permitted to intervene and therefore submitted to the jurisdiction of the court. The court took testimony to determine whether he would grant such motion and denied the request, and in Nelson v. Ecklund, 67 N. D. 140, 270 N. W. 347, supra, we held the rights of the plaintiff remained untouched.

The term "party beneficially interested" does not confine the applicant to one formally named as a party in the proceedings to be reviewed. A person may be beneficially interested in the decision of the court though he is not technically a party to the action. One is beneficially interested in a matter when his legal rights are invaded.

In the case at bar the remedy by appeal does not exist and therefore the reason for denying a writ of review does not exist and when the reason for a rule ceases, so should the rule itself. Compiled Laws, § 7244. Startup v. Harmon, 59 Utah, 329, 203 Pac. 637, 640. Such term will not be given a close construction but must be applied liberally to promote the ends of justice. Semones v. Needles, 137 Iowa, 177, 114 N. W. 904, 906, 14 L.R.A.(N.S.) 1156, 15 Ann. Cas. 1012 (an action for injunction). Thus, "A party against whom a judgment is sought to be enforced, although not a party to the mandamus, may apply for a writ of certiorari." Clary v. Hoagland, 5 Cal. 476.

Judgment against defendant had been reversed on appeal and plaintiff thereafter obtained a peremptory writ addressed to the clerk of court requiring the latter to issue a writ of restitution pursuant to the judgment obtained but thereafter reversed. Defendant was not a party to the mandamus proceedings, but the court held he was sufficiently interested to entitle him to a writ of certiorari. As stated in Crowell v. Circuit Ct. 50 S. D. 276, 209 N. W. 539, "In exceptional cases it will issue upon the petition of one interested in the subject matter upon which the record acts."

It is not necessary for the applicant to show that the decision sought

to be reviewed enhanced his rights, increased his property, or was productive of good to him. One is beneficially interested in a proceeding if one has a special right in the matter involved so that the decision affects it even adversely for one has a right to have the right protected. People ex rel. Sheridan v. Andrews, 52 N. Y. 445, 449. In this case cited it is said: "The statute authorizing the writ in this case (certiorari) does not define the persons in whose behalf or upon whose application it may be issued."

But though the relator had not been made a party to the proceeding below, yet the court held that "In view of the comprehensive character of the remedy and the nature of the proceeding" the writ was properly awarded as relator's possession of property "might be divested without an opportunity to be heard, and he would be put to his action to regain it."

With us the proceedings sought to be reviewed, on their face, determine the rights of the parent and the child. "A father and mother of a legitimate unmarried minor child are entitled equally to its custody, services, and earnings" (Section 4424 of the Supplement) unless legally deprived thereof. Where the mother is dead, the father is entitled to the custody, services, and earnings of the child. It is true that the rights of the parents are to be enforced in the light of the best interest of the child, the best interest of the child being paramount. Certainly, where the decree of adoption adjudges that all rights of the father have ceased, he is beneficially interested in the proceedings even though not a technical party thereto. On the record the decree stands as disposing of his rights, and if not legal, he is entitled to have that portion of the decree annulled.

It is conceded that the plaintiff did not personally consent to the adoption of the child and no notice of the application was given him. Section 4444 of the Supplement provides that, "The consent of a parent . . . who is insane or otherwise incapacitated from giving consent . . . may be dispensed with, and consent may be given by the guardian, if there be one, or if there be no guardian by the board of administration."

For the purpose of this decision, we assume the defendant was insane at the time the petition for adoption was filed. The question of whether he was insane at that time was a matter of fact to be deter-

mined by the district court when hearing the petition for adoption as an explanation of why *the consent* of the parent had not been secured. There is ample authority for the contention that the exceptions to the consent of parents are to be passed upon by the court when it takes jurisdiction of the proceedings and proceeds to determine the matter. At the hearing these exceptions are weighed and the decision thereon is a decision of a question of fact. It can not be said, therefore, that the district court did not have jurisdiction of the adoption proceedings. But before making its decree the court was required to determine as a matter of fact whether the plaintiff herein was insane and, therefore, whether the consent given by the board of administration was a proper substitute in the case.

Section 4444 of the Supplement deals with the consent of those who represent the child. The parents are the natural guardians of the child and as such must ordinarily consent to the adoption. But there are many cases where consent to the adoption can not be obtained. Parents may have abandoned the child, or be insane, or othewise incapacitated; or they may have been deprived of their rights. Nevertheless, someone must consent to the adoption of the minor. For such cases the statute makes provision.for consent by the guardian of the child, and if there be no guardian, then by. the board of administration. This § 4444 of the Supplement, in referring to guardian, has reference to the guardian of the child and not to the guardian of the insane person. If the father was in fact insane, his consent could not be obtained. He was the natural guardian. It is conceded no guardian had been appointed for the child. Someone had to consent for the minor, and, therefore, the statute provides that the consent of the board of administration was sufficient so far as consent was concerned.

Confusion appears to arise from failure to distinguish between the consent of the insane person and notice of proceedings to be given to him. If he be insane, the statute protects the child by providing that the board of administration may consent when there is no guardian; but this does not make the board of administration guardian of the alleged insane person.

While the consent of the father may not have been necessary, nevertheless he was entitled to notice of the proceedings. It is true the statute makes no provision for notice; but. adoption proceedings are judicial

in their nature (Re Mair, 61 N. D. 256, 260, 237 N. W. 756, 757) and there can be no judicial hearing of any kind without notice to the parties affected.

That our statute requires notice in a case of alleged abandonment and is silent as to other situations where it is said a child may be adopted, does not affect the elementary and fundamental principle that notice of the proceedings is an essential element. Where a parent abandons his child, it may be said he has waived his rights to the child. This is intentional. If in the case of an intentional act notice must be given so that rights are protected, surely in an unintentional condition there should be greater solicitude to protect rights. Section 4446 of the Supplement requires notice of adoption proceedings to be given to the board of administration in every case, even in a case where consent of the board can not be given. Surely if the board of administration must have notice, the natural parents must have notice. Silence of the statute can not be construed as legislative intent that a parent may be judicially deprived of rights without notice. Because a statute makes no provision for notice does not say that notice is not required. If a statutory form of notice be prescribed, ordinarily it would be sufficient. If the statute be silent as to form, it becomes the duty of the court to devise some adequate form before a person may be divested of rights. Notice of proceedings is an essential requirement of justice before rights are terminated.

In Re Knott, 138 Tenn. 349, 197 S. W. 1097, it is said that where the statute provides for a petition for decree of adoption and sets forth the effect of the decree but provides for no notice to the natural parents, it is "presumptively intended that such proceedings should be in accordance with the usual practice of courts of record, and thereunder notice to such parents is necessary, but, the notice need not necessarily be a formal notice, though some notice and some appearance must be shown." "The plainest instincts of natural justice require that the natural parents should know of the proceedings before the custody of their child is taken from them and given to another." Re Knott, supra; Furgeson v. Jones, 17 Or. 204, 20 Pac. 842, 3 L.R.A. 620, 11 Am. St. Rep. 808. This latter case cited says, "No person shall be personally bound by a decree until he has his day in court, by which is meant until he has been duly cited to appear, and has been afforded an opportunity

to be heard. A judgment without such citation and opportunity wants all the attributes of a judicial determination."

In Child Sav. Inst. v. Knobel, 327 Mo. 609, 37 S. W. (2d) 920, 76 A.L.R. 1068, it is held that where the written consent of the legal custodian of the child is not filed in court, notice of an adoption proceeding must be given to him even though the statute provides that the consent of the parent shall not be required in the case where the parent is insane, etc.

Because no provision is made for notice in matters affecting the rights of one said to be insane does not dispense with the judicial requirement for notice. "It is a fundamental principle of justice, essential to the rights of every man, that he shall have notice of any judicial proceeding that is about to be had." McCurry v. Hooper, 12 Ala. 823, 46 Am. Dec. 280; Eddy v. People, 15 Ill. 386; Martin v. Motsinger, 130 Ind. 555, 30 N. E. 523; Stewart v. Taylor, 111 Ky. 247, 63 S. W. 783; Holman v. Holman, 80 Me. 139, 13 A. 576; Evans v. Johnson, 39 W. Va. 299, 19 S. E. 623, 23 L.R.A. 737, 45 Am. St. Rep. 912. See note in 23 A.L.R. 598.

In Chase v. Hathaway, 14 Mass. 222, the court had before it the question of the appointment of a guardian of an alleged insane person where, because no provision was made in the statute for notice to the party alleged to be incompetent by reason of insanity, the judge did not think such notice essential. But the court stated (p. 224):

"We are of the opinion that, notwithstanding the silence of the statute, no decree . . . so materially affecting the rights of property and the person, can be valid, unless the party to be affected has had an opportunity to be heard in defense of his rights.

"It is a fundamental principle of justice, essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to answer such charges as, according to those laws, will justify a forfeiture or suspension of them. And whenever the legislature has provided that, on account of crime or misfortune, the public safety or convenience demands a suspension of these essential rights of the individual, and has provided a judicial process, by which the fact shall be ascertained, it is to be understood as required that the tribunal, to which is committed the duty

of inquiring and determining, shall give opportunity to the subject to be heard in support of his innocence or his capacity.

"It has been intimated that notice to an insane person would be of no avail, because he would be incapable of deriving advantage from it. But the question upon which the whole process turns is, whether *he is* insane; for the presumption of law is, that every man is of sound mind until the contrary is proved; and it being possible that interested relatives might falsely suggest insanity, with a view to deprive the party of the power of disposing of his estate, that very possibility should be guarded against by personal notice to him, when practicable, that he may expose himself to the view of the judge, and prove, by his own conduct and actions, the falsity of the charge."

It is true these cases refer to guardians of the property of an alleged insane person; but the same principle is applicable in adoption proceedings, even in cases where the natural parents are said to have abandoned a child and no provision is made for notice in such cases. See State ex rel. Thompson v. District Ct. 75 Mont. 147, 242 P. 959. Here it was claimed the mother had abandoned the child and therefore her consent was not necessary (this being the provision of this statute) and consent not being necessary, notice need not be given; but the court held (p. 150, 242 P. 960) that though her consent was not necessary if the allegation were true, yet "before a valid order of adoption could be made without her consent, the court must have determined that she had abandoned the child, and to adjudicate that she had abandoned her own offspring, without notice to her or an opportunity to appear and defend against the charge, is a doctrine that will not be countenanced." In support, the court cites Schiltz v. Roenitz, 86 Wis. 31, 56 N. W. 194, 21 L.R.A. 483, 39 Am. St. Rep. 873.

The court in Furgeson v. Jones, 17 Or. 204, 20 P. 842, 3 L.R.A. 620, 11 Am. St. Rep. 808, states: "No person shall be personally bound by a decree until he has his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard."

In State ex rel. Thompson v. District Ct. 75 Mont. 147, 242 P. 959, supra, the court was asked to annul a decree of adoption in so far as it affected the mother of the child who had not been served with notice. This court says: "The order of adoption, if permitted to stand, fixes

the legal status of the child; it changes the relationship of the child to its natural parents (§ 5864), establishes a new relationship as between it and the foster parents, affects the course of descent, and, as in this instance, gives the child a new name (§ 5863). It must be conceded that a judgment in habeas corpus could not go further than to determine the legality of the custody of the child. It could not obliterate the record made in the adoption proceeding, which is the very end sought to be accomplished by the writ of review. For this reason we hold that the remedy by habeas corpus is not adequate, and that the writ of review was issued properly."

Respondent relies on Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am. St. Rep. 17, which holds a decree of adoption good though no notice of the proceedings was given to the father. But the real issue in this case cited was the relationship between the adopter and adoptee and the status of the latter as an heir of her parents by adoption. In so far as the case indicates no notice of proceedings needed to be given to the father though his rights were affected, we can not consider it authority.

It follows, therefore, that the decree of adoption is not binding upon the plaintiff, and the attempt to deprive him of his natural and statutory rights is void so far as he is concerned.

"The mere fact that the relator may treat the proceeding as void will not bar his application for the writ." State ex rel. Enderlin State Bank v. Rose, 4 N. D. 319, 331, 58 N. W. 514, 519, 26 L.R.A. 593.

In the case at bar the question of the custody of the child is not involved. We pass solely upon the question of whether the rights of the father have been determined legally. The custody of the minor will remain as it is unless changed by further proceedings, also the privileges granted by the court for plaintiff to visit the minor. We do not determine whether the decree is binding as between the defendant and the minor. Such question is not before us. To the extent that the decree of adoption appears to affect the rights of the plaintiff, it is void, and the lower court will modify it accordingly.

NUESSLE and MORRIS, JJ., concur.

CHRISTIANSON, Ch. J., and SATHRE, J., dissent.