[File No. 6975]

## IN THE MATTER OF THE APPLICATION OF FELIX RAYMOND, FOR A WRIT OF HABEAS CORPUS.

FELIX RAYMOND, Petitioner and Appellee, v. MRS. JOHN GEVING, Respondent and Appellant.

(20 NW2d 335)

Opinion filed October 22, 1945

*Cox, Cox & Pearce,* for petitioner.

*Floyd B. Sperry,* for respondent and appellant.

144

BURR, J. This is an appeal from the judgment of the district court of Mercer county awarding to the petitioner the custody of his infant daughter Karen Alice Raymond.

In April 1945 the petitioner applied to the district court for a writ of habeas corpus and in his petition he alleged he is the father of the infant child Karen Alice Raymond, who is two

years of age, and that his wife, the mother of the child, is dead. He set forth that from the time the child was born until April 5, 1945 he had had the custody of the child, but that on said day he had permitted the defendant, who is the sister of the child's mother, "to have temporary custody of said child for three days," for the purpose of letting her and other relatives of the deceased mother "see the child and bid the child goodbye" before petitioner and said minor child moved to the city of Milwaukee, where the petitioner was about to take up his residence and that thereafter the respondent refused to return the custody of the child to him. In his petition he further set forth that he is able and willing to take care of the child, provide it with a home and all the necessaries of life and so he prayed that the writ issue directed to the respondent and to respondent's sister, Mrs. Ingvold Helling and to Mr. Ingvold Helling, the husband of Mrs. Helling, requiring them to produce the said infant child before the court and show cause why the child should not be delivered to the petitioner. He includes the Hellings in his petition as the child was in their home, and they are interested in having the child remain with respondent.

The respondent's return sets forth: that she is the sister of the deceased mother; that this child was in her home under the care of respondent's mother; that owing to an injury which the petitioner received in the fall of 1941, his ability to work is limited and he is not qualified to do any professional work or any kind of skilled labor; that in May of 1943 the child's mother was engaged in her profession as a qualified nurse, but with the petitioner visited the respondent's home during that year; while living in Chicago these parents had the respondent and her sister come to Chicago for the purpose of taking care of the child; that the child's mother was ill at the time; that the mother's sisters went to Chicago and thereafter returned with the child and the child was cared for in the home of the respondent's mother and father; that in 1943, while the petitioner was entering the hospital in Rochester, Minn., the child's parents requested the affiant or another of her sisters to come to Chicago to

take the child back to their home; that at that time the child's mother was ill and the petitioner was physically unable to take care of the child; again in February 1944 such request was repeated and complied with; that at said time the petitioner said he knew of no one in his family who was able to take care of the child and so the child remained with respondent and her relatives for two months; that through the efforts of respondent and her relatives the child was treated by doctors and was cared for in their home by her relatives and was in their custody up to and including September 1944 at which time the petitioner and his wife took the child to Bismarck; thereafter, near Christmas time in 1944, the child remained with respondent and her people for ten days during which time the child took ill and was under the care of the affiant's sister; that the petitioner's mother died in February 1945 and thereafter the welfare of the child was fostered by the sister of the petitioner; that in April petitioner notified affiant he was going to Milwaukee to be employed by his brother and would live with his brother who had a business there; that at said time the petitioner stated he thought it would be better for the child to remain with the respondent "and her folks" until he made arrangements to establish a home for her; that the petitioner was employed in Bismarck at the time of his wife's death, knew of her illness and failed to make any arrangements to obtain a doctor; that "the mother of the child prior to her death stated that it was her wish that if anything happened to her, she wanted her sister, Gertrude Melby, to have the custody of said child, and that the petitioner, among others told the affiant of said request." There are other allegations made in this return which are not necessary to set forth.

This return by respondent is supported by affidavits of her sister, mother, brother and brother's wife setting forth allegations of the same import. There are also affidavits from parties not related to the petitioner, showing the character of the respondent and of the respondent's relatives and their ability to properly take care of and rear the child.

The petitioner filed affidavits by his brother and his brother's wife to the effect that the petitioner has steady employment in the brother's business in Milwaukee, that they have a good home, that petitioner and the child were to live with them in Milwaukee and that they are ready and willing and able to have him come there with the child.

On the return day testimony was taken and the court made very extensive findings of fact, to which reference will be made hereafter, and concluded from the evidence presented to him "that the welfare and interests of said child, Karen Alice Raymond, will be best subserved by her being in the custody of her father, Felix Edward Raymond." Judgment was entered in accordance therewith and the respondent appealed.

In this jurisdiction the province of the writ of habeas corpus is extended beyond the original conception and it may be employed "as a means for inquiring into and determining the rights of conflicting claimants to the care and custody of a minor child." In a proceeding to determine the rights of custody the welfare of the child becomes an important consideration; Knapp v. Tolan, 26 ND 23, 142 NW 915, 49 LRA(NS) 83; Flath v. Nelson, 53 ND 603, 207 NW 444; Garrett v. Burbarge, 55 ND 926, 215 NW 479, and where in habeas corpus proceedings the custody of a minor child is involved and the court awards the possession and custody to one of the contending parties the judgment of award is one affecting substantial rights and is appealable. Larson v. Dutton, 40 ND 230, 168 NW 625.

This case, though a hard-fought contest, reveals human nature in some of its finest aspects. Both the father and the deceased mother's relatives are intensely interested in the welfare and the best interests of the child involved. The father, with the natural instincts of a parent, feels confident as to his ability to care for, protect and properly rear his own child and the deceased mother's relatives display a regard and affection for the child which is most commendable.

When the mother died, her parents, several sisters and her

brother were living. The child was in the home of some of them from time to time and there is no question but what any of them, if given the custody of the child, would afford the child an excellent home and assure proper care and upbringing.

The testimony taken is voluminous. The transcript of testimony contains over four hundred eighty pages. We do not deem it advisable to set forth a resumé of this testimony.

The district court made a painstaking and exhaustive review of the testimony in the findings of fact. The real issue in the case is the character, record, and present and future prospects of the petitioner.

We will review the evidence with reference to him, bearing in mind that while under our statute the father and mother are equally "entitled to its custody . . . and neither can transfer such custody . . . to any other person, without the written consent of the other, except in case of death, desertion or abandonment," (14–0904 Rev Code) yet where as in this case the mother is dead the father has the right to the custody of the child superior to that of anyone else, unless the best interests of the child require he be deprived of such custody.

It is claimed by the respondent that the mother of the child, shortly before her death, stated she wanted her sister to have custody of the child after her death. In Flath v. Nelson, 53 ND 603, 207 NW 444, we hold that where two persons are equally entitled to the custody of the child in other respects, preference will be given to the one indicated by the wishes of the deceased parent. But that rule is not applicable to the situation here for the two persons contending for custody here are not equally entitled to the custody of the child—the right of a parent being superior. See Barnes v. Long, 54 Or 548, 104 P 296, 25 LRA (NS) 172, 21 Ann Cas 465.

The record shows the child's parents were married in Illinois June 14, 1941; the child was born February 7, 1943. For a long period prior to her death, the mother had been in poor health and therefore, the parents turned to the mother's relatives for

help in taking care of the child. This requirement was accentuated by the fact that the petitioner had been injured in the year 1940 and for a long time thereafter was suffering from this injury. Consequently the mother's sister went to Chicago and brought the child to North Dakota, taking care of it in her own home. The petitioner paid a bill for $324.40 "For expenses incurred in helping to care for Mrs. Raymond and the child." In September or October 1944, the petitioner and his wife removed from Chicago to Bismarck and lived in an apartment there, this child living with them. Shortly after their arrival the mother was taken seriously ill, and the petitioner consulted with her relatives in regard to the child. The mother was a patient in hospitals for treatment. Her husband took her to the Mayo clinic for examination and treatment, and returned to Bismarck on February 9, 1945. The mother died February 14, 1945. During the time the father was in Bismarck he was employed in the Montgomery Ward & Co. establishment earning $32.50 per week and shortly afterwards was employed in another establishment at a salary of $110.00 per month, and continuously thereafter. It was evident that he, being employed constantly through the day, would not be in a position to take care of a child eighteen months old. The upshot of the consultation with the mother's people was that the child was placed in a private home in Bismarck. During the time the child was there the father visited it almost every night and the mother's sisters visited the child continually, whenever the opportunity afforded and displayed great interest in its welfare.

In March of this year the petitioner determined to move to Milwaukee, Wisconsin. He was born in Michigan, but for years lived in Wisconsin, and his mother and brother live in that state. His brother Fred is in business in Milwaukee operating a restaurant. He had been in this business for ten years. He is married and the record shows has a sufficiently large home which will accommodate the petitioner and the petitioner's child. In this case the petitioner's brother, Fred Raymond states specifically that the petitioner is to be associated with him in his

business in Milwaukee, that he "Is ready, able and willing to assist his said brother, Felix Raymond, in every way to provide a suitable and proper home for the said Karen Alice Raymond. That affiant for many years has rented a dwelling at 3275 A. South Pine Avenue, in the city of Milwaukee, and that said dwelling is of ample size to accommodate the said Felix Raymond and his daughter, Karen, to live with affiant and his family."

Mrs. Raymond, wife of Fred Raymond, furnished her affidavit to the same effect. She shows she has been working with her husband in the restaurant, but the plan is that when the petitioner comes she will discontinue her work there, "and devote her full time to the care of the home and the said Karen Alice Raymond." The record further shows that if the plaintiff goes to Milwaukee to be associated with his brother his weekly salary is to be "$35.00 per week, together with board at the said restaurant in addition thereto." The record shows the business to be "a going and prosperous business."

There is no attempt to discredit the statements made by Fred Raymond and his wife Alice Raymond and so this court finds that if the petitioner removes to Milwaukee he has immediately a suitable home and will furnish suitable care for the child.

There is testimony in the record introduced for the purpose of reflecting upon the petitioner's attitude toward his wife during her sickness and his conduct during that time. This is introduced, apparently, for the purpose of showing he is careless in his attitude toward those dependent upon him. But we are not unmindful of the fact that conclusions drawn from actions differ frequently in accordance with the attitude of the person drawing the conclusions. The mother's people were intensely interested in her welfare and in the welfare of her child. Whether this would make them critical of the actions of the petitioner, who may not have expressed his feelings in the way they would expect, is difficult to decide. We need not pass upon the psychology of people. The plaintiff had been injured, his injury cost him large sums of money, but he has savings of over

$7,000.00 in the bank, almost $6,000.00 of this being a savings account in the National Exchange Bank of Milwaukee. He has a small amount invested in United States bonds, he has several policies of life insurance, and a policy of hospital insurance for himself and for the child. He was interested in his wife so as to take her to the Mayo clinic. There is nothing to show any ill feeling or estrangement between them, and while he may have done at times things which some would construe as forgetful of the condition of his wife and his proper conduct toward her we must remember he was charged with the necessity of earning a living, was engaged through the days in his duties and naturally his wife was home alone at times. She followed doctor's directions herself. She had been a professional nurse and his natural assumption was she would be qualified to look after herself unless physically incapacitated which she was not. She died unexpectedly in their apartment about 6:10 P.M. and while he was away, but he was attending to his duties and there is nothing to indicate he thought or should have known that death was imminent. An autopsy showed calcified brain tumor as the cause of death. The record shows she may have had other ailments. The distressing incidents connected with her death need not be set forth.

There are other matters which were introduced which if given the widest construction that could be placed upon them showed that he was not a perfect man. The courts do not engage in a Diogenic search for a perfect individual and the case is full of poignant feeling. Witnesses testified as to his good reputation. The trial court found that he "is of good moral character, sober and industrious and is able to earn a fairly good salary as a salesman and has no vicious or immoral habits or associations." From the record we draw the same conclusions.

The record shows that sometime in April this year the petitioner informed the respondent, and others of his wife's relatives, of his plan to go to Milwaukee to engage in business and that he intended to leave shortly. Consequently at the request

of a sister of the respondent he permitted her to take the child to the home of the respondent so she could spend a day or two with her mother's relatives prior to leaving with her father. On the 5th of April the child was taken to Zap and other places in Mercer county for such visits. The court found that these parties promised to have the child back in Bismarck on the 7th of April. There is testimony in the record supporting that finding. The petitioner went to visit his wife's relatives and to bring his child back with him. They refused to allow him to have the child, and thereupon the petitioner applied to the district court for a writ of habeas corpus. The matter has been in court ever since, the child during this time being in the custody of the father and during a major portion of the time in a home satisfactory to all concerned. It does appear that the father removed the child from the place agreed upon by the parties and without notice to the mother's relatives. There is nothing to indicate he was making any attempt to take the child out of the state during the pendency of these proceedings, but his failure to notify them is open to criticism.

The natural rights of a parent are not conclusive or exclusive for, as we have held, such rights are to be enforced in the light of the child's best interests. Nelson v. Ecklund, 68 ND 724, 283 NW 273. The paramount consideration is the child's welfare, (Larson v. Dutton, 43 ND 21, 172 NW 869.) In a dispute over the custody of a minor the court is to be guided by the best interests of the child in respect to temporal, mental and moral welfare. Flath v. Nelson, 53 ND 603, 207 NW 444, supra.

Before the natural rights of the parent to have the custody of his own child will be set aside by the court it must appear that the action, situation and condition of the parent is such that the best interest of the child will suffer if it were to remain in the custody of the father. The age of the child is such that it cannot express any preference. Its immaturity is such that it requires careful attention and oversight. There is nothing whatever to indicate that the father does not have the proper regard for his child and proper interest in the welfare of his child.

The record shows him to be industrious, he has accumulated some property, despite his injuries and the expense to which he has been subjected because of the illness of his wife. He has a right to choose the place of his home and the fact that he desires to move to Wisconsin and thus the child would be farther removed from its maternal relatives, does not in itself prevent him from establishing his home in Wisconsin. The anxiety of the maternal relatives as to the condition of the child and the way in which it will be reared is understandable, but in itself cannot prevent the father from going to another state to establish his home and to take his child with him. Section 14-0907 Rev Code provides:

"A parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child."

See Wilson v. Mitchell, 48 Colo 454, 111 P 21, 30 LRA(NS) 507. This statutory provision is broad enough to permit the father to establish his residence in a state other than North Dakota.

The record shows a proper place and more than a reasonable opportunity for the father to earn a living; a suitable home for the child; and that the father is competent, qualified and will rear the child properly. The trial court was right in giving to the father the custody of his child and so the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.