**In the Matter of the Custody of the Minor Child, Darlene Rae WAGNER.**

**Theodore WAGNER and Goldie Wagner, Petitioners and Appellants,**

v.

**Mr. and Mrs. Carl ERICKSON, Respondents.**

**No. 7667.**

Supreme Court of North Dakota.

Aug. 10, 1957.

Lashkowitz & Lashkowitz, Fargo, for appellants.

Theodore F. Kessel, LaMoure, for respondents.

GRIMSON, Chief Justice.

In this case Theodore Wagner, and Goldie Wagner, petitioned the court for the issuance of a writ of habeas corpus under Chapter 32–22, NDRC 1943. They allege that Theodore Wagner's daughter, Darlene, is being detained in custody and control by the defendants without any authority, and ask that the defendants bring said Darlene before the court for a determination of who has the right to her custody. A writ of habeas corpus was issued by the court. The defendants made a return to the writ showing that they had Darlene before the court as commanded and claiming that when Darlene was but six months old Mrs. Erickson began to take care of her because of illness of both Darlene and her mother; that after her mother died, when Darlene was one year and four months old, the respondents took her into their home permanently; that she has been in the home of the respondents for more than nine years; that the father, Theodore Wagner, has not contributed to her support and has not shown any interest in the child, or concern for her welfare; that he has to all intents and purposes abandoned her. They allege that the best interests and welfare of the child, Darlene, are that her custody, care and control be retained by the respondents and pray for judgment accordingly.

A trial was had after which the court vacated the writ and decided that said minor child, Darlene, shall remain in the custody of the respondents, Mr. and Mrs. Carl Erickson. An appeal was taken by the petitioners. There are twenty-one specifications of error. Those specifications alleged errors in the findings and conclusions of the court covering the entire record. In their brief, appellants' counsel admits that and states: "We, therefore, see no reason for arguing each and every one of these specifications separately. We shall argue them in toto." That procedure was also followed by the counsel for the respondents. We will therefore consider the specifications as they apply to the findings and conclusions of the court without specific reference to each one.

In regard to the custody of a child our law, Section 30–1006, NDRC 1943, provides:

"In appointing a general guardian or in awarding the custody of a minor, the court is to be guided by the following considerations: 1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if a child is of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question."

While this is a habeas corpus proceeding it is in the nature of an equitable action and is to be determined upon equitable principles by what appears to be for the best interests of the child. That is the repeated holding of this court.

In Borg v. Anderson, 73 N.D. 95, 11 N.W.2d 121, 122, this court says:

"The doctrine that in determining the custody of a child the paramount consideration is the child's welfare is one of general application that obtains in most courts throughout the country. It has been reiterated by this court in Larson v. Dutton, 43 N.D. 21, 172 N.W. 869; Flath v. Nelson, 53 N.D. 603, 207 N.W. 444, and Garrett v. Burbage, 55 N.D. 926, 215 N.W. 479. See also Nelson v. Ecklund, 68 N.D. 724, 283 N.W. 273."

It is contended by the appellant that preference, in designating a custodian for a

child, must be given to a father because of the father's natural and legal rights in his child. That would be correct if both parties were otherwise equally entitled to custody. Section 30-1007, NDRC 1943. There is a rule of law to that effect which must prevail unless the evidence shows that such decision would not be for the best interests of the child. Appellants cite Wooley v. Schoop, 234 Iowa 657, 12 N.W.2d 597; State ex rel. Nelson v. Whaley, 246 Minn. 535, 75 N.W.2d 786; Winter v. Winter, 184 Iowa 85, 166 N.W. 274; Lursen v. Henrichs, 239 Iowa 1009, 33 N.W.2d 383; State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N.W. 956. In those cases the custody was given to the parent but the evidence failed to show, in all of them, that the custody by the parent would not be for the best interests of the child. That is also our holding in Garrett v. Burbage, 55 N.D. 926, 215 N.W. 479, and in Raymond v. Geving, 74 N.D. 142, 20 N.W.2d 335, 339, where this court said:

"The natural rights of a parent are not conclusive or exclusive, for, as we have held, such rights are to be enforced in the light of the child's best interests. Nelson v. Ecklund, 68 N.D. 724, 283 N.W. 273. The paramount consideration is the child's welfare. Larson v. Dutton, 43 N.D. 21, 172 N.W. 869. In a dispute over the custody of a minor the court is to be guided by the best interests of the child in respect to temporal, mental and moral welfare. Flath v. Nelson, [53 N.D. 605, 207 N.W. 444]."

In Larson v. Dutton, 43 N.D. 21, 172 N.W. 869, 871, this court said:

"The legal rights of the contending parties, however, are not of controlling importance. The question of the custody of the child 'is dealt with as one of discretion, to be exercised on equitable principles, rather than one of strict right, in whatever forum it arises.' And in a case like this, where the natural parent has in effect abandoned all dominion over a child, and it has been taken into the home of others, who have received and treated it as their own, the fact that the child has not been legally adopted by the latter is by no means decisive of the right of custody. For even the legal dominion which the law gives to the natural parent has its limitations. Such dominion is in the nature of a sacred trust which the law imposes upon the parent for the benefit of the child. Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.Rep. 17."

The evidence shows that Mr. and Mrs. Wagner lived at Nortonville, a small town in LaMoure County where Mr. Wagner was janitor of the school, receiving $100 per month pay. Darlene was born to them on November 10, 1945. She was a sickly little baby. Mrs. Wagner was ill then and had been ill for some time prior thereto. Mrs. Erickson learned of the condition and went over to the Wagners for a visit. An arrangement was then made between Mrs. Wagner and Mrs. Erickson that Mrs. Erickson would take over the care of the child. Thereafter Mrs. Erickson did that and went over to the Wagner home as much as three times a day, for an hour or more at a time, taking care of the child. The child was later taken over to Mrs. Erickson's home daily. Mrs. Wagner died in a hospital on March 11, 1947. Mrs. Erickson continued to take care of the baby and for a while was paid $1 per day by Mr. Wagner.

The Wagners had three other children, Lillian, 11 years of age, Delores, 9½ years, Doris, 6½ years. During the summer following Mrs. Wagner's death, Mr. Wagner got homes for Delores and Doris with a Mrs. Jorgenson and kept Lillian with him. Then in the fall he secured a housekeeper and took all of his children home. That did not work out and the housekeeper left after two months. Mr. Wagner's work prospects at Nortonville were then not good so he decided to move to Fargo. He placed the oldest daughter, Lillian, with Mr. and Mrs. John Moldenhauer, farmers residing near

Jud, North Dakota, where she has been ever since without any support from Mr. Wagner. Darlene was again placed with Mr. and Mrs. Erickson, the respondents, where she has remained ever since. After the director of the LaMoure County Welfare Board examined the Erickson home and found it satisfactory the Welfare Board paid the Ericksons $38 per month for the care and keep of Darlene. Just prior to the starting of this action Mr. Wagner told the Board that he was going to take care of the support of Darlene thereafter so the payments were stopped. He had not done much for her support up to that time.

Mr. Wagner went to Fargo where he obtained work with Armour & Company and stayed at the Fargo Hotel. Later he rented "a little shack" on 13th Avenue. He took Delores and Doris to live with him. He has continued working for Armour & Company and has received increasing wages until, at the time of the hearing, he was earning as much as $4,500 a year gross, amounting at least to $350 per month take-home pay.

Mr. Wagner kept Delores with him about three years until she finished the 8th grade in school. Then she went out working. Two years later she married and now lives in Omaha, Nebraska. Doris stayed with her father until she finished the 8th grade and then left and is now living with her sister in Omaha. The oldest daughter, Lillian, has at all times stayed with the Moldenhauers, and while living with them she finished high school and attended college and is now teaching school. Mr. Wagner furnished no support for her care or keep but when she had surgery her hospital bill was paid out of Mr. Wagner's group insurance. In 1950, Mr. Wagner had an attorney write Mr. Moldenhauer asking that Lillian be returned to him, and if not that Mr. Moldenhauer pay him $25 per month for her services. Lillian objected but the Moldenhauers sent her to Mr. Wagner's home to avoid trouble. She did not like it at his home and returned the next day to the Moldenhauers' home and has lived there

ever since that time. Her father has not kept up any relationship with her since.

Mr. Wagner's second wife did not long live with him, so he secured a divorce from her for desertion in 1951. On Jan. 23, 1956 Mr. Wagner married his present wife, Goldie, a widow, a practical nurse, 47 years old, married twice, divorced once, mother of two children who are grown up and married. Mr. Wagner had met her the year before in Kansas and had seen her only twice before the marriage. Mr. Wagner is 51 years of age. This proceeding was brought June 13, 1956. No request had been made by Mr. Wagner for custody of Darlene before that. The Wagners had lived together about five months at the time of the hearing. They now own and live in a four room house in West Fargo.

While there is no evidence against Mr. Wagner as to his moral character, or his financial ability to take proper care of Darlene, there is a question about the consideration he has given his daughters in the past. The oldest daughter, Lillian, complains of the treatment he gave the girls during the two months he had a housekeeper after her mother's death. He saw the two girls that went with him to Fargo only through the 8th grade in school. Then Delores went out to work for herself with no supervision by Mr. Wagner, and two years afterward married. Doris also left when she had finished the 8th grade in school. By the time they left his home he was earning a good salary and should have been able to see them at least through high school had he so desired. He has never done anything for Lillian except to see that a hospital bill was paid. It was shortly after he married the second time that he tried to get Lillian back or pay for her services. Was his chief interest in the value of her services to him, or was it in doing something for Lillian?

There is a dispute as to how much he gave the Ericksons to supplement the $38 per month which the Welfare Board paid. Mrs. Erickson says it was not over $100. He claims to have paid $600 which in any event

is not a large sum of money during seven years. He has never arranged for a reunion of the four girls at his home or at Omaha. The Ericksons were fair with him in taking Darlene for a visit to her father four or five times a year and in inviting him to come and visit Darlene at their home which he did two or three times a year. He gave her some presents. Otherwise he does not seem to have been anxious to keep custody of Darlene until now after he has recently married a woman little known to himself and a stranger to Darlene. His wife, Goldie, was confined to a hospital in Wichita in 1954 and again in 1955. Shortly after her marriage to Mr. Wagner she hurt her back and was in the hospital for two weeks and under a doctor's care for a couple of months. There is no showing as to what kind of home they would really make for Darlene in the future. Mr. Wagner's past treatment of his daughters does not assure a very desirable treatment of Darlene if he were given custody of her.

Mr. and Mrs. Erickson live in Nortonville. He is 54 years old. She is 52. His occupation is trucking and farming. He owns a half section of land and machinery enough to farm it. He also owns five lots in town, besides two trucks for his trucking enterprise. He has a gross income of between $5,000 and $7,000, assuring him of a net income of about $3,500. Mr. and Mrs. Erickson have five children and have given each of them a college education. The youngest child is a boy 21 years of age, now finishing a course at the Agricultural College. Three of the girls are married. The fourth one is a governess for Stanley Dollars in California. Prior to her marriage Mrs. Erickson was a school teacher with a Normal School training. Mr. and Mrs. Erickson live in a five room, comfortable home. Darlene has her own room. Several of the neighbors testified as to the good standing of the Ericksons and as to the fine care they were giving to Darlene. To the same effect also was the testimony of two welfare workers who visited their home.

Darlene was questioned by the Court as to her desire. While Darlene said she loved her real father, Mr. Wagner, she also said that she loved Mr. and Mrs. Erickson very much. The court asked her: "Now, as far as your Daddy Wagner is concerned, do you love him?" Ans. "Yes." "Do you love Mr. and Mrs. Erickson, Mother—(Ans) "Very much." and Daddy Erickson? (Ans) "Very, very much." "Are you happy in the home of the Ericksons?" Ans. "Very much happier than I would be in Daddy Wagner's home." Q. "Has somebody told you that, or do you think that is true?" Ans. "I think it is true, because more friends there and I am more used to trees and more used to the people in my town." Darlene seems to have been of sufficient intelligence to warrant the court in taking her preference into consideration in determining which is the best home for her. Sec. 30–1006, NDRC 1943 (1).

To grant the Wagners custody of Darlene now would be taking her from the love and affection of the only real parents she has known and from the community with which she is familiar to a new, strange home and community. There she would live with a father who, although kind to her, has not shown much affection or consideration for her or for any of his children, and with a stepmother who has been in ill health and whom she does not know at all. Judging by Mr. Wagner's past dealings with his daughters, Darlene's future with the Wagners would be uncertain. He has shown indifference to his children except when they might be of some benefit to him.

On the other hand Darlene was nursed back to health by the Ericksons, brought up by them as their own child and given all the advantages of a good home, proper schooling and religious training, and the attention and care a girl so badly needs. She loves the Ericksons as her parents. Mrs. Erickson is the only mother Darlene has ever known. Both Mr. and Mrs. Erickson have shown by their treatment of their own chil-

·dren in preparing them for life and by giving them a proper education that they understand the essentials in the development of youth. For nine years Darlene has enjoyed with the Ericksons a good, stable home, real parental love and everything necessary for a happy childhood. That is the home for which she has expressed a preference.

Clearly, the best interests of Darlene are served by leaving her in the Erickson home as the District Court did.

The judgment of the District Court is affirmed.

BURKE, JOHNSON, SATHRE and MORRIS, JJ., concur.