317 N.W.2d 391 (1982)
In the Interest of D. R. J., a Child.
J. W. and G. W., Petitioners and Appellants,
v.
D. J. B. R., Mother and J. L. R., Respondents and Appellees,
Kent Higgins, Guardian Ad Litem for D. R. J., a Child, Appellant.
Civ. No. 10118.
Supreme Court of North Dakota.
March 18, 1982.
*392 Kent A. Higgins, guardian ad litem, argued, and Baer & Asbridge, Bismarck, for petitioners and appellants.
Bair, Brown & Kautzmann, Mandan, for respondents and appellees; argued by Dwight C. H. Kautzmann, Mandan.
PEDERSON, Justice.
This is an attempted appeal "from the Findings of Fact, Conclusions of Law, and Order for Judgment" in a custody proceeding. At this time the claims to custody of D. R. J. are those made by (1) the genetic parent (natural mother), § 14-15-01(5), NDCC, and (2) by the acting parent, the grandmother, § 14-14-02(9), NDCC. D. R. J. was born in 1974 and, except for the months of September and October 1976, has lived in the home of the grandmother. Prior to September 1976, D. R. J.'s natural mother also lived in the home of the grandmother. She has made a few short visits to her mother's home (D. R. J.'s grandmother) since that time.
There was no objection to the appeal on the ground that the orders for judgment are interlocutory and not appealable (§ 28-27-02, NDCC). This court does not have jurisdiction over non-appealable orders and, as such, we are required to take notice of jurisdictional questions. Center State Bank, Inc. v. State Bank. Bd., 276 N.W.2d 132 (N.D.1979).
Judgment had not been entered in Center State Bank but, relying upon the authorization of § 28-27-29, NDCC (superseded by Rule 35(b), NDRAppP), we remanded to permit the judgment to be entered and then re-certified to this court. Recently, however, we dismissed an appeal from an order for judgment where judgment had not been entered, without prejudice to a subsequent appeal after judgment was entered. Simpler v. Lowrey, 316 N.W.2d 330 (N.D.1982). When judgment has been entered in a case and the subsequent appeal is taken only from a previous interlocutory order, we are without jurisdiction and must dismiss the appeal. See The First National Bank of Hettinger v. Dangerud, 316 N.W.2d 102 (N.D.1982).
Because uncertainty of the custody determination should be kept at a minimum for the welfare of the child, we conclude that it is appropriate in this case that we remand for entry of the judgment pursuant to Rule 35(b), NDRAppP, after the trial court has considered and determined custody based upon best interest of the child. Recently, in *393 Otter Tail Power Co. v. Demchuk, 314 N.W.2d 298, 301 (N.D.1982), we said:
"If, during the consideration by this court of any appeal, it becomes apparent that there are issues in the case that have not been tried or have not been determined by the trial court, and this court determines that it is necessary or desirable that such issue be first tried and determined, this court may remand the case to the trial court for disposition of the undetermined matters." [Emphasis in original.]
Some of the complex background of this case can be found in J. L. R. v. Kidder Cty. Soc. Serv. Bd., 295 N.W.2d 401 (N.D.1980). In that case the juvenile court, proceeding under the Uniform Juvenile Court Act (Chapter 27-20, NDCC), found that D. R. J. was a deprived child (§ 27-20-02(5), NDCC), and awarded "legal custody" to the Kidder County Social Service Board for two years and "physical custody" to D. R. J.'s natural mother. We reversed the part of the order which awarded physical custody to the natural mother and directed that D. R. J. remain with her grandmother. Justice Vande Walle, writing for a unanimous court, said that the case had some "bizarre elements." Subsequent proceedings have not simplified matters.
It appears that the State's involvement with D. R. J. began in June 1978 when the grandmother claimed that D. R. J. had been abandoned. The record of the trial court upon which J. L. R. v. Kidder Cty. Soc. Serv. Bd. is based is not before us at this time and it is difficult now to distinguish action in the juvenile court from action in the district court. Collateral matters relating to parentage determination and habeas corpus, for example, have been presented to the trial court both before and after our consideration of J. L. R. v. Kidder Cty. Soc. Serv. Bd.
In the instant case the trial court identified itself as the district court but acted in an area where jurisdiction is exclusively in the juvenile court. It noted disagreement as to which law applied. It found that there was no continued deprivation. Giving that finding "appreciable weight," as we are required by § 27-20-56(1), NDCC, we agree with the trial court. We do not agree, however, with the conclusion of the trial court. Custody should not be shifted from the grandmother to the mother without a determination as to the best interest of the child.
Exclusive jurisdiction has been granted to the juvenile court over proceedings in which it is alleged that a child is deprived, and over proceedings calling for the termination of parental rights (§ 27-20-03, NDCC). When the North Dakota Legislative Assembly, in 1969, enacted the Uniform Juvenile Court Act, it specifically omitted the grant of exclusive jurisdiction to the juvenile court over proceedings for adoption and proceedings to determine custody or to appoint a guardian. See Uniform Laws Annotated, Vol. 9A, Masters Edition, Juvenile Court Act, § 3. Other differences between the recommended Uniform Law and the North Dakota Uniform Juvenile Court Act were pointed out in Anderson v. H. M., 317 N.W.2d 394 (N.D.1982), which was filed this date.
Because the district court is the juvenile court, it may seem inconsequential to be concerned about which hat the judge was wearing at any specific time in an ordinary case. It is undoubtedly confusing for everyone. There seems to be little justification for a conclusion that, for example, the juvenile court has any jurisdiction over a determination of paternity under the Uniform Parentage Act (Chapter 14-17, NDCC), or over habeas corpus proceedings pursuant to § 14-09-06, NDCC. On the other hand, the district court has no original jurisdiction over those matters which are exclusively granted to the juvenile court.
We conclude that, as a general rule, the jurisdiction of a juvenile court to exclusively make juvenile court determinations under Chapter 27-20, NDCC, ends when there is a finding of no continued deprivation. The child involved should not then be shifted from the home where she was found when the State first intervened. There is *394 an exception to this procedure, however, when there are exceptional circumstances. See Hust v. Hust, 295 N.W.2d 316 (N.D. 1980).
Exceptional circumstances exist when the custody dispute pits the psychological parent against the natural parent. In this case, the grandparent is the psychological parent. Jurisdiction at this point is no longer exclusively in the juvenile court but is shared with the district court. A "custody proceeding" as defined in § 14-14-02(3), NDCC, can involve matters exclusively in the jurisdiction of the district court (such as divorce), or exclusively in the jurisdiction of the juvenile court (such as deprivation), or it can be within the jurisdiction of either.
Although labels may not ordinarily be significant, it is often vital that this court know under what authority the trial court acts if there is an appeal. For example, we have consistently held that Rule 52(a), NDRCivP, does not define the appellate scope of review of juvenile court decisions under the Uniform Juvenile Court Act. On the other hand, appellate review of decisions made by any court under the domestic relations laws are defined by Rule 52(a).
If a juvenile court proceeding pursuant to Chapter 27-20, NDCC, encounters a custody dispute between a natural mother and a grandmother who has become a psychological parent, its focus must shift to the issue of the best interest of the child. The need for a triggering circumstance before state intervention and before the best-interest issue is viable is discussed by Goldstein, Freud and Solnit in "Before the Best Interests of the Child", The Free Press, New York, 1979. We have cited these authors for "Beyond the Best Interests of the Child" in Filler v. Filler, 219 N.W.2d 96 (N.D.1974), and six times thereafter, in stressing the significance of the best-interest issue.
Whenever best interest has been triggered, courts are required to apply §§ 14-09-06.1 and 14-09-06.2, NDCC, in the evaluation process.
Many years ago Chief Justice Christianson wrote:
"For even the legal dominion which the law gives to the natural parent has its limitations. Such dominion is in the nature of a sacred trust which the law imposes upon the parent for the benefit of the child. [Cite omitted.] As long as the parent is true to such trust the right to the custody and control of his or her child is paramount, but when the parent fails to perform the duties which the trust imply, the parent forfeits the legal dominion over the child as a matter of absolute right; and such dominion will not be enforced by the courts if the court deems it to be contrary to the best interests of the child." Larson v. Dutton, 43 N.D. 21, 172 N.W. 869, 871 (1919).
See also Raymond v. Geving, 74 N.D. 142, 20 N.W.2d 335 (1945), and In re Wagner, 84 N.W.2d. 587 (N.D.1957).
We accordingly remand the record to the district court pursuant to Rule 35(b), NDRAppP, for consideration of the issuebest interest of the childand for preparation of a finding thereon and for entry of judgment. The matter will be re-certified to this court and the parties will be permitted to re-brief and re-argue all issues. No costs are allowed on the appeal.
ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.