In the Interest of B.M., A Child.

L.J. BERNHARDT, Director, Stark County Social Service Board, Petitioner and Appellee,

v.

S.M., Mother, Respondent and Appellant,

J.R., Father, Respondent,

James D. Geyer, Guardian ad Litem, Appellant.

Civ. No. 10407.

Supreme Court of North Dakota.

June 24, 1983.

Tom Henning, Asst. State's Atty., Dickinson, for petitioner and appellee; argued by Tom Henning, Asst. States Atty., Dickinson.

Freed, Dynes, Reichert & Buresh, Dickinson, for S.M., respondent and appellant; argued by Eugene F. Buresh, Dickinson.

James D. Geyer, guardian ad litem, Dickinson, pro se.

PEDERSON, Justice.

This is an appeal by B.M.'s guardian ad litem and B.M.'s mother, a child aged 14 years, challenging the termination of parental rights. Because a point of law disposes of the appeal, only a brief statement of facts is necessary. We conclude that the

termination was improper and we reverse the termination order.

Before B.M. was born, S.M., her unwed mother, made some preliminary arrangements with a social worker at the Stark County Social Services Agency, which included signing a voluntary termination of parental rights and consent to adoption through a licensed, child-placing agency of the illegitimate child soon to be born. Before B.M. was released from the hospital, S.M. was contacted by one of the nurses who wanted to adopt B.M. Agreement apparently was reached and, accordingly, S.M. withdrew her consent for voluntary termination which she had given the social services agency and, instead, S.M. "placed" the baby in the home of the nurse.

Upon learning of the "placement" of the baby, the social services agency obtained from the juvenile court an emergency shelter order, took custody of the baby, and petitioned for an involuntary termination of parental rights on the ground that the "placement" of the baby violated §§ 50–12–17 and 14–10–05, NDCC, and constituted deprivation under § 27–20–02, NDCC. Although it is not a part of the record in this case, we are informed that on the same day that the petition for termination was filed by the social services agency, the nurse filed a petition for adoption of B.M. (Ch. 14–15, NDCC, Revised Uniform Adoption Act). Action on the petition for adoption has been suspended pending disposition of this appeal.

Section 50–12–17, NDCC provides:

"No person shall place or cause to be placed any child in a family home for adoption without a license so to do from the department of human services except that a parent, upon giving written notice to the department, may place his or her own child in the home of the child's grandparent, uncle, or aunt for adoption by the person receiving the child. The child shall be considered abandoned if proceedings for the adoption or guardianship of the child are not initiated by such relative within one year following the date of notice of placement. Every per-

son who violates any provision in this chapter is guilty of a class C felony." Section 14–10–05, NDCC provides:

"No person, other than the parents, may assume the permanent care and custody of a child, unless authorized so to do by an order or decree of a court having jurisdiction, except that a parent, upon giving written notice to the department of human services, may place his or her own child in the home of the child's grandparent, uncle, or aunt for adoption or guardianship by the person receiving the child. The child shall be considered abandoned if proceedings for the adoption or guardianship of the child are not initiated by such relative within one year following the date of notice of placement. No parent shall assign or otherwise transfer his rights or duties with respect to the care and custody of his child. Any such transfer or assignment, written or otherwise, shall be void. This section shall not affect the right of the parent to consent in writing to the legal adoption of his child, but such written consent shall not operate to transfer any right in the child in the absence of a decree by a court having jurisdiction. Any person who violates the provisions of this section is guilty of a class A misdemeanor."

Although an argument has been made that S.M. only left her baby with the nurse for babysitting purposes, that argument is inconsistent with S.M.'s testimony and with a finding of fact made by the trial court that the baby was "placed ... [with the nurse] for purpose of adoption."

A deprived child is defined in § 27–20–02(5)(b), NDCC as one who "has been placed for ... adoption in violation of law." The trial court conclusion of law that B.M. was a deprived child was supported by clear and convincing evidence and is affirmed. Under the Uniform Juvenile Court Act, courts may, by order, terminate the parental rights of a parent with respect to his child if:

"The child is a deprived child and the court finds that the conditions and causes

of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." Section 27–20–44(1)(b), NDCC.

 In a parental termination proceeding, even a finding of deprivation based upon clear and convincing evidence does not provide the "triggering circumstance" to permit a shift of focus to the best interest of a child such as might be the case in a custody dispute. See *In Interest of D.R.J.,* 317 N.W.2d 391, 394 (N.D.1982). We said in footnote 5 of *In Interest of J.A.,* 283 N.W.2d 83, 92 (N.D.1979):

"Thus our statements in previous cases that the best interest of the child is not the primary factor to be considered in termination proceedings mean merely that the three factors set 'forth in Section 27–20–44(1)(b), N.D.C.C., must be proved by clear and convincing evidence to justify termination of parental rights."

 After finding that B.M. was a deprived child because of the unlawful placement, the court made the following additional pertinent finding of fact:

"XIV ... that the deprivation caused by the improper placement ... is likely to continue and not likely to be remedied due to the youth of ... [S.M.] and her inability to provide parental care for ... [B.M.]."

When the condition of deprivation is caused by an unlawful placement, the revocation of the placement terminates that deprivation. In this case, the placement of B.M. with the nurse was terminated by action of the juvenile court. The fact that the baby's mother is a mere child may be the basis for a conclusion that it is not in the baby's best interest to be placed in the custody of that child-mother, but that is not the issue at the moment.

 There is no evidence (clear and convincing, or otherwise) that supports the finding that the unlawful placement (deprivation) will continue because of S.M.'s youth. The evidence is clear and convinc-

ing that the deprivation condition has abated. Our review, being in the nature of trial de novo, does not require that we give the trial court findings the same degree of deference that we must when Rule 52(a), NDRCivP, applies.

Other questions, the answers to which are not necessary to the determination of this case, need not be answered. *Hospital Services v. Brooks,* 229 N.W.2d 69 (N.D.1975). Although we share in the trial court's deep concern for the prevention of black marketing or brokerage of babies (see Annotation 3 ALR4th 468, Criminal Liability—"Baby Broker Acts") and the ethics of nurses, we conclude that the order terminating parental rights should be reversed and the case remanded to permit the orderly disposition of the petition for adoption which is pending.

Reversed and remanded.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.