## No. 17,154.

HARRY I. GARDNER, ET AL., AS GARDNER CONSTRUCTION
COMPANY *v.* CITY OF ENGLEWOOD.

(282 P. [2d] 1085)

Decided March 7, 1955.

Messrs. WAGNER & WYERS, for plaintiffs in error.

Mr. M. O. SHIVERS, JR., Mr. ROBERT B. LEE, for defendant in error.

MR. JUSTICE CLARK delivered the opinion of the Court.

THIS controversy resulted from the construction by Gardner Construction Company, a co-partnership, hereinafter referred to either as plaintiff or Gardner, of a covered concrete storage reservoir, and related work connected therewith, for the City of Englewood, a municipal corporation, to which we hereinafter refer as defendant or City. The project was almost completed when it developed that there existed a difference of opinion between the parties as to which of them should pay for the concrete that had been used in the construction of the covered reservoir, and, upon completion, City retained $16,000 of the funds which it otherwise would have paid Gardner. Gardner commenced action seeking judgment against City in the sum of $16,000 for breach of contract, or in the alternative, upon the theory of quantum meruit. Defendant by answer admitted that it entered into a contract with Gardner, but alleged that the contractor was to furnish all concrete required without cost to City. Gardner, on the other hand, insists that the contract specifically provided that concrete required for the covered reservoir was to be at the cost of City and that its bid contemplated only the placement of said concrete.

Following submission of all the evidence offered, counsel for City moved for a directed verdict on plaintiff's first cause of action upon the ground that there was no contract between the parties, and on its second cause, for the reason that an action in quantum meruit is not main-

tainable against a municipal corporation. Without announcing any specific findings with respect to said motions, the trial court simply granted them, directed verdicts accordingly, and entered judgment against plaintiff and for defendant, with costs.

Aside from testimony pertaining to a pink sheet entitled "Adendum" and offered as defendant's Exhibit 5, there appears to be no substantial conflict in the evidence, or as to the facts in the case. Exhibit 5 was first admitted in evidence and later rejected and ruled out by the trial court. Since cross error to this latter ruling is not assigned, it, along with the "pink slip," may be, and are, wholly disregarded by us. Facts pertaining to material issues presented will be related in connection with our discussion thereof.

At this point we digress from the subject at hand to call attention of counsel, not only who appear in this case, but others who may be interested and read this opinion, to the fact that the rules of civil procedure pertaining to review of cases in this Court are designed in such manner that a close observance of them will greatly lighten our labors. We suggest a careful study of all rules but particularly in this case to Rule 115, believing that such study will result in the presentation of cases for review in a much more orderly and effective manner. By means of rather recent revisions we have undertaken to save expense to litigants and time of their attorneys by the elimination of abstracts of record and the permitting of the filing of typewritten or mimeographed briefs where not in excess of 35 pages. In return, we solicit the full cooperation of counsel. It is not that we intend to be critical, nor to offer advice to counsel appearing here in the manner in which they should practice their profession, but we believe that a careful consideration of Rule 115, R.C.P. Colo. will convince anyone interested that its purpose and intent is to bring about the presentation of a case before this Court in somewhat the following order:

1. A concise statement of the nature of the case;

2. Where the pleadings are material, a narration thereof without quotation, unless necessary to point up a matter alleged to be error;

3. A concise statement of the facts in narrative form;

4. Any other matters, such as objections to the admission of evidence, the giving or refusal to give instructions, or which form the basis of alleged error. Up to this point counsel should be objective in all statements, being careful not to commingle argument or comment with his statement of the issues, facts and ruling of the trial court. The facts should be presented fairly and impartially so that one reading the brief is readily enabled to ascertain what the controversy involves and understand its full factual background. Only poor logic, it would seem to us, would impel one to state only such facts as seem favorable to his side of the case, as to do so invites certain denial from his adversary, and forces upon us needless waste of time in doing that in which we have every right to rely upon counsel for aid, i.e., in obtaining a fair factual statement.

5. Next should be set forth in separate and numbered paragraphs the particular points wherein it is alleged that the trial court was in error. These likewise should be specific and presented without argument. If thought desirable they may be followed by brief summarization as to what the argument concerning said points will contain.

6. Finally, the argument, where counsel may let himself go, taking up in order the points previously specified and, avoiding unnecessary repetition, setting forth clearly and fully his position in respect to each, together with citations of authorities in support thereof. Extensive quotations from the transcript, or other lengthy matters of record, should be set forth in appendices; appropriate reference thereto being made in the brief proper. Naturally, we realize that this exact form may not always be followed to the best advantage, but if gener-

ally adhered to, it will bring about a more orderly, concise, direct and effective presentation of points relied upon and will materially lighten the burden upon this Court.

In the instant case counsel for plaintiff has not specifically set forth in their brief the points of alleged error upon which dependence is had for reversal of the judgment, nor does the argument follow any outline or summary thereof, but is so commingled with statements pertaining to pleadings, facts, pre-trial order and other matters, that it is indeed difficult for us, in some instances, to clearly determine the precise point intended to be presented. As nearly as we can ascertain the points of alleged error are:

(1) That the trial court erred in holding that there was no contract between the parties;

(2) That error was committed through the failure of the trial court to determine specifically whether the contract could be reconciled within itself, or was ambiguous and uncertain to the point requiring the admission of extrinsic evidence;

(3) That had the court determined the contract to be ambiguous and uncertain, it was error on its part to refuse to admit testimony offered on behalf of plaintiff to the effect that certain provisions thereof were not written especially for the work in hand, but were inserted as general, or "stock" paragraphs;

(4) That plaintiff's second cause of action was applicable only in event it should be determined that no contract existed between the parties and that it was error to dismiss said second cause of action prior to the determination by the trial court that no contract existed, and thereafter upon such determination.

Defendant's brief follows the general plan of that of plaintiff, but if we understand it correctly, on behalf of the City it is contended:

(1) That if exhibit C be considered as the entire contract between the parties, inconsistencies within itself

prevent its reconciliation so as to determine the intention of the parties;

(2) That evidence admitted to assist in construction of the contract discloses no meeting of the minds between the parties;

(3) That if plaintiff bid on the basis that the concrete for the reservoir was to be furnished by the City, such bid was violative of certain applicable statutes, and the alleged contract therefore is invalid;

(4) That as a matter of law plaintiff cannot recover upon its second cause of action.

■ Was there a contract? A contract, unadorned by the many engraftments which generally relate more to its enforcement than to its existence, and in its simplest form, is a transaction involving two or more individuals whereby each becomes obligated to the other, with reciprocal rights to demand performance of what is promised by each respectively. *Dartmouth College v. Woodward,* 4 Wheat. (U.S.), 518, 4 Law, Ed. 629.

■ In this instance pains were taken by City to prepare a lengthy written document (Exhibit C) which was duly signed by the properly authorized representatives of both parties. Was it a contract, or only a worthless compilation of waste paper? Certainly it was treated as a contract by both parties. It is axiomatic that the construction placed upon an instrument before controversy arose concerning it generally is binding upon them and also the court.

Pursuant to the provisions and stipulations of this written document, Gardner went upon the designated lands of City and constructed thereon the facilities and structures which he had agreed to erect and install. He fully performed all obligations on his part in accordance with the plans and specifications prepared by City's engineer, and no complaint is made on behalf of City to the contrary, or that the workmanship was in anywise deficient, or the structures defective.

■ City, on the other hand, in compliance with its

promise, paid from the public till to the contractor over $75,000 of the stipulated price, including extra items added. A municipality is prohibited by law from disbursing public funds for such a purpose except pursuant to contract, and if there be none in this instance, then the officers of defendant are in a precarious position indeed.

Certainly there was and is a contract. The City admits it in its answer. The determination otherwise constituted manifested error. That both parties complied fully with all terms of the contract up to the one matter in dispute is not denied. This controverted item pertains not to any phase of the work, but only to settlement of account. The sole issue in this unfortunate controversy is not whether there was a contract, but which party to the contract is required to furnish and pay for the 1500 odd yards of concrete that went into the construction of the covered reservoir. Gardner contends that the concrete was to be furnished by City, while City insists that Gardner was not only to place the concrete, but also to furnish it for the price agreed upon. If Gardner is right, it is entitled to judgment for $16,000, the amount withheld by City; if wrong, then only to the difference, if any, between the cost of the concrete and $16,000, plus interest in either event.

The next problem presented is whether it may be determined from the contract as a whole which party is liable for the cost of concrete going into the covered reservoir structure. The trial court was right in stating that this is an issue of law for determination by the court and in this effort the court is privileged to call to its aid a number of well-recognized rules of construction.

"A cardinal rule of construction in this connection is that, each and every part and portion of a contract is to be given effect, if possible, and that where all provisions, stipulations and conditions thereof may be given effect without one contradicting the other, then the contract cannot be said to be uncertain or ambiguous." *Or-*

*iental Refining Co. v. Hallenbeck,* 125 Colo. 77, 240 P. (2d) 913.

Some courts have held in effect that the instrument should be taken by its four corners and when some meaning and purpose can be discovered for each of the apparently conflicting portions thereof, the instrument shall be construed so as to have that effect.

█ Another rule of construction is that, in event of language of doubtful meaning in a contract, or where it appears indefinite or uncertain to a degree, it shall be interpreted most strongly against the party who drew it. *Platte Valley Ditch & Reservoir Co. v. Lallier Construction & Engineering Co.,* 91 Colo. 317, 14 P. (2d) 1079.

"The City, in erecting its water works system, was acting in a proprietary capacity and not in a governmental capacity, and its contracts are governed by the same rules as contracts made between individuals." *Maney v. Oklahoma City,* 150 Okla. 77, 300 Pac. 642, 646.

With respect to building and construction contracts it is stated in 17 C.J.S., at page 772, section 326 (b), that:

"In case of a conflict or inconsistency between them, the contract prevails over the plans and specifications, except where the terms of the contract are general; the original plans and specifications prevail over a copy annexed to the contract, *although not over a copy furnished to the contractor, and on the faith of which his bid was made and contract entered into; a specific provision* of the specifications *controls a general provision;* written specifications prevail over plans or drawings; and plans and specifications prevail over working plans subsequently furnished to the contractor." (Emphasis supplied)

While the trial court made no finding and stated no reason for the direction of verdict upon plaintiff's first cause of action, counsel for City say in their brief that the trial court determined the contract to be contradictory, ambiguous, inconsistent and irreconciliable in its terms. We cannot accept such a statement by counsel

when the trial judge himself remained silent. Neither are we convinced that the trial court, following a logical analysis of the contract involved herein, guided by the rules in aid of construction, will be unable to fully reconcile the assertedly contradictory provisions of said contract. The contract comprises a number of instruments including (a) Notice to Bidders; (b) Instructions to Bidders; (c and d) Forms of Bonds; (e) Contract; (f) Proposal; (g) Drawings; (h) Specifications. Each of those several instruments was furnished by City to Gardner when it signified its intention to bid, and its bid was made in connection with its understanding therof. Two schedules in blank form were furnished Gardner, and these filled out and separately returned pursuant to the provisions of section 23 of the contract, which required bidders to submit complete bids on both schedules. It is agreed that the items contained in Schedule 1 are all priced on the "unit" basis and those in Schedule 2 on the "lump sum" basis; terms of the trade generally well understood among contractors and builders. Item 4 of Schedule 1 is "Concrete in Place," while item 5 of the same schedule "Steel Reinforcement in Place." City agrees that it was to furnish the steel reinforcement called for in Item 5, but denies obligation to provide concrete for placement by the contractor under item 4, the basis of this entire controversy. Section 28, a specific provision, apparently was intended to further clarify this situation as it provides, with respect to materials, that:

"The City will furnish all reinforcement steel required in the concrete structure as shown on the Drawings, and the reinforcement steel to be placed in the vaults housing the inlet and outlet control facilities and that required to be placed in the control house substructure. The reinforcement steel will be available at the City storage yards at Layton and Lipan in stock and random lengths. The Contractor will be required to fabricate and place all reinforcement. The City *shall furnish all*

steel and cast iron pipe and specials, check valves and gate valves, *concrete* and fencing, steel manhole covers, wrought iron water stop, rubber water stop, cork filler, copper nails, flange gaskets, bolts and nuts required for the successful completion of the project in accordance with the Drawings and these Specifications. The Contractor shall furnish all other materials and all equipment, including, but not restricted to, concrete pipe, culvert across drainage ditch, fencing, bar gratings, wire mesh screen, manhole covers, ladder rungs, cast iron manhole cover, asbestos graphite sheets, the cost of hauling, handling and storage of these materials shall be included in the unit or lump sum prices bid in the Schedules for the work in which the materials are to be used." (Emphasis supplied)

Counsel for City maintain that the stipulation of section 28 obligating it to furnish the concrete for the reservoir is contradicted by other sections of the specifications; particularly, the last three sentences of section 42, which relate to measurement of, and payment for, "concrete work" and placement of steel in the reservoir and declaring "unit prices" to include all "materials (except materials to be furnished by the City)." Reference is further made to section 118 as being contradictory of section 28, which, in a manner, is correct, except that each section refers to a different subject, 118 being entitled "Measurement for payment," while 28, entitled "Materials," is specific on who furnishes what.

In an effort at reconciling the various provisions of the contract within itself, the court should not only take into account the foregoing matters, but any and all other sections or phrases that tend to give light upon the subject. Is there a trade meaning to the term "in place," as used in items 4 and 5 of Schedule 1 of the bid? Is there significance to the terminology in titles of sections 113 and 114, the first being "Placing Concrete," and the latter "Placing Reinforcement?" On the eight separate items included in Schedule 2, covered by sections 44 to

51, inclusive, of the specifications, all "lump sum" bids, it is definite that the contractor is to furnish all materials, with certain exceptions. If the same obligation was to be imposed with respect to item 4 of Schedule 1, why was it not likewise definitely so stipulated? Nowhere in the contract or specifications is there specific provision to this effect.

■ If the trial court, by application of the foregoing principles, is able to determine from said instruments taken by the four corners and considered as a whole, that each portion and paragraph thereof has meaning unto itself and that no material degree of uncertainty or ambiguity exists, then its labors are over and it need pay no attention to what parties may now say as to what their intentions may have been. Intent is to be determined from the contract itself, if possible to do so, and parties are bound by what the contract says rather than what they say. *Plate Valley Ditch & Reservoir Co. v. Lallier Construction & Engineering Co., supra.* Also, one bidding for a construction job has a right to rely upon the plans and specifications furnished him by the representative of the owner, and respective obligations of the parties are to be measured in accordance with that particular set of plans and specifications upon which a contractor submitted his bid. *Staley v. New,* 56 N.M. 756, 250 P. (2d) 893, 895.

Should the trial court find it impossible to reconcile completely the provisions of the contract involved in this case and thereby conclude that ambiguity prevailed, it would be its duty in that event to receive and consider extrinsic evidence in order to determine the intention of the parties with respect to the furnishing of the concrete for the construction of the covered reservoir. Unless and until that point is reached, intent is to be determined from the contract itself. Among other things to be considered, in the event the contract was determined to be ambiguous, would properly be evidence as to which of the paragraphs of the specifications forming a part of

the contract are specially prepared for this project and which are standard or "stock" · paragraphs, since there might be a difference in determining the weight of evidence as between the two types.

Under the circumstances present in this case there is no merit to the contention on behalf of City that the contract is invalid because not bid on the same basis as other offers were formulated, if such were in fact the case.

Having definitely determined that there is a contract involved in this controversy, no consideration need be had as to matters relating to plaintiff's second cause of action. In so far as possible for us to ascertain, we have attempted to discuss all issues properly involved in this controversy. The suggestion has been made that we determine the case on its merits, but such is the province of the trial court, whose function we should not usurp.

The judgment, therefore, is reversed and the cause remanded to the trial court with instructions to vacate the judgment heretofore rendered, and, either upon the record as made, or with the aid of such additional evidence as may meet the approval of the trial court, it be reconsidered in conformity with the views herein expressed.