## No. 18,360.

Irwin C. Michels *v*. F. Gretchen Clemens, etc.

(342 P. [2d] 693)

Decided July 20, 1959.

Mr. CHESTER A. BENNETT, for plaintiff in error.

Messrs. MARCH & WELLS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

THE writ of error in this case is directed to a judgment of dismissal of an action brought by the plaintiff in error (a resident of Decatur, Georgia) in the county court of Larimer County in one of two actions filed simultaneously by him attacking the validity of a decree of final settlement in the estate of his father, Albert C. F. Michels, deceased. The defendant in error F. Gretchen Clemens was defendant in the trial court and appears to be the daughter and sole heir at law of Vera M. (Scheerer) Lee, a sister of the plaintiff and his co-devisee under the will of their father. The other action referred to was commenced in the district court of Larimer County and involves the same defendant, as well as other parties claiming an interest in the property affected. A judgment of dismissal was also entered in that action and a writ of error (No. 18,517) is pending to review that judgment.

The facts appearing from the record, though obscured by a surplus of verbiage in both the pleadings and the briefs, may be summarized as follows:

Albert C. F. Michels, the father of plaintiff and Vera M. Scheerer, died December 19, 1939, leaving a last will and testament (executed March 6, 1926) by the terms of which he devised all of his property and the income therefrom to his widow Sarah M. Michels for her life, and upon her death the remainder to be divided equally between his son, the plaintiff, and Vera M. Scheerer, his daughter. The terms of the will so far as pertinent here, are as follows:

"After all my just debts are paid and discharged, I give, Devise and Bequeath unto my wife, Mrs. Sarah M. Michels, all my Real and Personal property, and the income from the same as long as she shall live.

"After the death of my wife, Mrs. Sarah M. Michels, my property shall be divided equally between my two children, namely, Mrs. Vera M. Scheerer and Irwin C. Michels; provided that the said Irwin C. Michels shall have paid to me or to my estate one note of $325.00 and one note of $199.50 and the interest on both notes according to the terms of each note, up to the time of payment. If the said Irwin C. Michels has not paid these notes, before the death of myself and of my wife Sarah M. Michels, he shall receive the sum of Five Dollars from my estate and the balance of my property shall become the property of my daughter, Mrs. Vera M. Scheerer."

This will was admitted to probate in the county court of Larimer County on February 10, 1940, and the widow Sarah M. Michels appointed executrix. The estate was probated in due course and on January 8, 1942, the executrix filed her final report, which was approved by the court on February 3, 1942, and her bondsmen discharged, the estate being to all intents and purposes fully administered and closed, although it does not appear that an order discharging the executrix was entered at that time.

It is alleged by plaintiff that the notes referred to in the will of the father were not listed or mentioned in the inventory of assets filed in the estate by the executrix, for the reason that they had been fully paid and discharged by him more than ten years before the father's death, and that the $5.00 mentioned in the will as conditionally bequeathed to plaintiff had not been paid to him.

Sarah M. Michels died on January 16, 1951, and on January 18, 1951, the daughter Vera M. Scheerer, then Lee, filed in the estate matter a petition requesting the appointment of herself as administratrix de bonis non, which being granted she immediately procured an order

for publication of notice of final settlement, and following publication of such notice filed a final report on March 8, 1951. On the same day a decree of final settlement was entered, which among other things recites: .

"And the court further finds that Sarah M. Michels departed this life on January 16, 1951, and that Irwin C. Michels, son of deceased, failed to pay the promissory notes mentioned in the will of deceased, or any part thereof, and that the $5.00 legacy bequeathed to him by the will of said deceased has been paid, and that Vera M. Scheerer, named as the beneficiary in said will, has remarried and that her name is Vera M. Lee, and that said Vera M. Lee is entitled to the entire residue of the property of said deceased as by said will provided."

It is admitted that no notice of the application for letters de bonis non, nor of the subsequent proceedings resulting in the entry of the decree of final settlement, was served upon the plaintiff, indeed no attempt was made to do so, although his residence and address were known to the parties and appeared upon the court records. It was the contention of the defendant, adopted by the court, that the publication of the notice of final settlement was sufficient, or if not, then the Notice to Non-resident Heirs-at-Law in connection with the probate of the will, received and acknowledged by the plaintiff some nine years before, constitute all the notice required.

With this record before it, the court concluded:

" * * * from the foregoing facts set forth in the plaintiff's Complaint showing that this court had jurisdiction to render the final decree in Estate No. 4395, the plaintiff must be and hereby is barred from pursuing this action by the doctrine of res judicata, as well as by the doctrine of laches. As set forth in the findings of fact above, Albert C. F. Michels departed this life on or about December 19, 1939, and the decree of final settlement was entered on March 8, 1951. Plaintiff has waited some 5½

years, that is, until November 28, 1956, to bring this action and is barred by the doctrine of laches."

It is the contention of plaintiff that the appointment of Vera M. Lee as administratrix de bonis non in her father's estate, and the subsequent proceedings leading to the entry of a decree of final settlement by which, without notice, he is deprived of his inheritance, were void for want of jurisdiction appearing upon the face of the record, and so subject to direct or collateral attack.

Defendant argues that plaintiff had ample notice of the 1951 adjudication as required by Colorado law and refers to service of citation to attend the probate of the will pursuant to C.R.S. '53, 152-5-23, and to the publication of notice of final settlement under C.R.S. '53, 152-14-11. This, it is said, coupled with the fact that plaintiff instituted suit more than five years after the entry of the final settlement decree of 1951, preclude his maintaining this action.

The service of process or notice in probate matters is governed by C.R.S. '53, 152-1-11 (3) (c), the last paragraph of which reads as follows:

"Except as in this chapter otherwise provided or permitted, service and proof of service of any process, notice, citation, writ, or order of court, the taking of depositions, and all other procedure under this chapter, shall be governed by the Colorado rules of civil procedure then in effect. Such rules shall not be applicable to proceedings during the administration of an estate for the construction or interpretation of a will, for determination of the identity or status of a member of a class, or for instructions, *but in such cases notice may be given to such persons and in such manner as the court may direct.*" (Emphasis supplied.)

This provision clearly contemplates that notice be given where the substantial rights of a party in probate proceedings, as in other matters, are to be adversely affected.

The notice to nonresident heirs-at-law, directed to

plaintiff, requiring him to attend the probate of his father's will, which he received and acknowledged on January 22, 1940, advised him that a document purporting to be the last will and testament of his father had been presented for probate, and that a hearing thereon would be held on February 6, 1940. It did not advise him that by acceptance and waiver of such notice he would be bound by any orders or judgments with respect to property devised to him by the will as the court might nine years thereafter make without notice at the instance of a co-heir or devisee. It advised him only that he was to appear before the court on the 6th day of February, A.D. 1940, then and there to attend the hearing on the probate of the alleged last will and testament of Albert C. F. Michels, deceased, and further to do and perform what shall *then,* by the said court, be required and adjudged.

▇▇ That the substantial rights of the plaintiff were vitally affected by the 1951 proceedings cannot be doubted. And although the existence of such rights patently appeared upon the face of the probate records then before the court, no notice was directed to be given "such persons" by the court in any manner as by law provided.

It is a fundamental principle of justice that a person shall have notice of any judicial proceeding affecting his rights. *Nelson v. Ecklund,* 68 N.D. 724, 283 N.W. 273.

▇▇ A notice to attend the probate of his father's will did not advise plaintiff that in an ex parte proceeding nine years thereafter, an order or decree of the court could or would be entered depriving him of property devised to him by such will. Nor did the published notice that on the 8th day of March, 1951, the administratrix de bonis non would present to the court her accounts for final settlement of the estate, inform the plaintiff or anyone else, that a decree would be entered eliminating him as a beneficiary under his father's will.

In *Schroeder's Estate v. Schroeder* (1944), 158 Kan.

783, 150 P. (2d) 173, the following statement of the court is pertinent:

" * * *. It is true that the statute in question provides that the petition to set aside land as a homestead may be heard with or without notice. There is another section which refers to what notice shall be given when notice is required by law or deemed necessary by the court.

"It is not clear, however, that these sections confer power on a probate court to have a hearing without notice of a matter wherein the result of the hearing would be to deprive an interested party of a valuable right. To so hold would be to confer power on the probate court which is not conferred on any other tribunal that we know of."

■ County courts sitting in probate matters have no more authority to conduct proceedings without notice in disregard of due process than do other courts or tribunals. *In re Oliver's Estate* (1947), 162 Kan. 407, 176 P. (2d) 574, says:

"Where the assets of an estate to be administered are involved, it would violate the very spirit of the probate code to permit action without notice to those having an interest under the law in the disposition of such assets."

In the recent case of *Thompson v. McCormick* (1959), 138 Colo. 434, 335 P. (2d) 265, we held a judgment of dismissal with prejudice rendered against a plaintiff who had not been given notice of a trial setting, was a nullity and subject to direct or collateral attack.

■ So in the case before us, we hold that the proceedings in the Michels estate, subsequent to the filing and approval of the final report of the executrix on February 3, 1942, were so flagrantly violative of due process as to be wholly null and void, hence not subject to a plea of *res judicata.*

■ It is argued that plaintiff, having waited more than five years to assert his right or interest in the property involved, is barred by the doctrine of laches from maintaining the action. We think the doctrine has no

application to the facts of this case. Plaintiff's interest in the real estate involved comes to him through devise in the will of his father. This will is a matter of record in the probate court of Larimer County, and, although not so stated in the record, no doubt appears of record in the office of the Clerk and Recorder of that county. Plaintiff's interest in the property is thus a matter of record for all to see. We know of no rule of law or equity which compels a property owner to proclaim his title or risk losing it, or to resort to court action to claim or defend that which the records reveal to be his. In *Wagenen v. Carpenter*, 27 Colo. 444, 61 Pac. 698, the court in disposing of a similar contention, said:

"But counsel for appellant also contend that, notwithstanding the fact that Gill's title to the four eighteenths interest still remained of record, by reason of his silence and failure to assert his right to the interest, it is to be presumed that he had abandoned or disposed of it prior to the relocation of the Paris. It certainly is not to be presumed, in the face of the fact that his title to this interest then stood of record in his name, that he had transfered it to any one else; nor is abandonment to be presumed from mere silence. A title to realty is not lost by failure of the owner to assert his claim to it."

And in *Davidson Chevrolet, Inc. v. Denver*, 138 Colo. 171, 330 P. (2d) 1116, we said: "A void judgment is vulnerable to direct or collateral attack regardless of the lapse of time."

Concluding, as we do, that the probate proceedings in the Michels estate, subsequent to the filing and approval of the final report of the executrix on February 3, 1942, are null and void; all of which appears on the face of the record in the probate proceedings, the judgment is reversed and the cause remanded with directions to the trial court to enter a judgment holding the decree entered March 8, 1951, in the Michels estate matter to be null and void.