No. 20,155.

Lloyd L. Pittman and Pittman Motors, Inc., and
Darwin D. Coit and Thomas C. Chapin *v.* The District
Court in and for the City and County of Denver, et al.
(369 P. [2d] 85)

Decided February 26, 1962.

Mr. John E. Walberg, for petitioners.

Mr. Darwin C. Coit, Mr. Thomas C. Chapin, pro se.

Messrs. Bromley & Kingsley, for respondents.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This is an original proceeding instituted in this Court by petition filed by Darwin D. Coit and Thomas C. Chapin, attorneys at law, who represented Lloyd L. Pittman and Pittman Motors, Inc., in an action pending in the district court of the City and County of Denver. In that action Pittman and Pittman Motors were defendants and William H. Kunkler was plaintiff. The action was based on a claim for damages allegedly sustained by Kunkler resulting from an automobile accident.

The issues were framed by the pleadings in said cause and the matter came on for pre-trial conference before the Honorable Edward J. Keating, district judge, on December 8, 1961. Duane O. Littell appeared as counsel for Kunkler and petitioner Chapin appeared as counsel for Pittmans. At that time Littell, as counsel for Kunkler, had not prepared a written "pre-trial statement" which the respondent Judge Keating held was required by Rule 5 (g) (2) of the Rules of the District Court of the Second Judicial District.

Petitioners assert in their petition filed here that they, as attorneys for the defendants in said action, "did have ready to be read into the record a statement pursuant to Rule 5 of the District Court Rules." Thereupon the matter was continued to December 15, 1961, for pre-trial conference. In response to the rule to show cause issued from this court the respondent judge asserts that he, "* * * asked Mr. Chapin for the pre-trial memorandum required by Rule 5. Mr. Chapin replied that he did not have one. The court then stated that the matter could not then proceed * * *." Rule 5 referred to requires that

at the pre-trial conference "each attorney must submit the following: [Rule 5 (g) (2)]

"(a) A concise statement of the facts in the case, including: * * *" (here follows a number of items to be specifically set forth.) The rule is silent as to whether this statement must be in writing. It is clear, however, that neither counsel for Kunkler, nor petitioners as counsel for the defendants, were prepared to submit a written statement on December 8 as required by said rule. The absence of such statement was the cause of the continuance. Responsibility for the delay was not attributed to the failure of counsel for one side more than the other. If a *written* statement was necessary before the cause could proceed, it is admitted that none was available from either side. The affidavit of Littell, filed with respondents' answer, admits that no such written statement was prepared by him.

When the matter came on for hearing December 15, 1961, Mr. Chapin, whose appearance had been formally entered as one of the attorneys for defendants, submitted a written statement which he asserts was a substantial compliance with the requirements of Rule 5. That written statement is a part of the record before us. It was marked as Exhibit 1 and received by the Court. The transcript of the court reporter shows that the following took place thereafter:

"THE COURT: Are you gentlemen ready to proceed with the pre-trial conference?

"MR. LITTELL: The Plaintiff is ready, Your Honor.

"THE COURT: How about, Mr. Chapin?

"MR. CHAPIN: I am ready.

"THE COURT: I want this record to show that what purports to be a statement of facts as marked as the Court's Exhibit No. 1, most certainly does not follow the Rules of the Denver District Court, so many times referred to by counsel for this defendant in his statement as to what is required of him at one of these pre-trial conferences and in the judgment of this Court, pages 7,

8, 9 and 10 most certainly explain to a man who is a member and officer of this Court what is required of him.

"MR. LITTELL: Well, does counsel admit to our claims here?

"MR. CHAPIN: We don't admit anything.

"THE COURT: You don't admit anything?

"MR. CHAPIN: No, sir.

"THE COURT: When do you want to go to trial?

"MR. LITTELL: We can go to trial after the first of the year.

"THE COURT: What is your request for a deposition?

"MR. LITTELL: I have a notice for a deposition of the Defendant on December 27 in the office of Russo. Now, is there any objection to that — have we failed in any way — if this man can't be here I want to know. I want to prepare for this man in Gunnison. Can he be here the 28th? I want to —

"THE COURT: What about it, Mr. Chapin? Is your man in Gunnison available for the deposition?

"MR. CHAPIN: He has to be brought from Gunnison. We were served with a notice of that. I believe it was two or three days ago — I think we received it the 13th and I have a two-day trial here in Denver District Court.

"MR. LITTELL: Are you going to try it?

"MR. CHAPIN: Not as far as I know.

"MR. LITTELL: Then, how does that interfere with —

"THE COURT: It is ordered that you will take his deposition on December 27, 1961, at 11:00 a.m. That is the order.

"Now, what date do you want to try the matter in January?

"MR. CHAPIN: Judge, couldn't it be — isn't it pretty hard on a defendant from Gunnison to bring him up here for the deposition?

"THE COURT: Not any more than it is to the Court and these attorneys and these people here with your actions in here this morning relative to this pre-trial.

"I am not going into this any further. It will be set for trial January 16, 1961, at 9:30 a.m.

"MR. CHAPIN: May I check that date?

"THE COURT: We will make the trial date for January 29, 1961, at 9:30 a.m.

"(After an off-the-record discussion, the trial date was set for January 29, 1961, at 9:30 a.m.)

"THE COURT: Mr. Littell, I want you to draw up an expense account for your services and whatever expenses you have incurred on this hearing this morning and submit it to this Court and it is going to be paid by these defendants.

"MR. CHAPIN: I wish to enter my objection and exception to this:

"THE COURT: Very well."

The certification of the court reporter is, "that I reported in shorthand all of the proceedings had, the testimoney, taken, and evidence adduced at the aforesaid hearing," and that the prepared transcript constituted a "full, true, and correct transcript * * *." We note that only one of the petitioners was before the court in person on either December 8 or December 15, 1961.

The undisputed showing before us is that petitioners had no knowledge of the order of court directing the payment by them of $150.00 into the court registry until an article appeared in the daily newspapers in Denver on the morning and afternoon of December 16, 1961, under bold headlines: "2 LAWYERS FINED $150 IN PRE-TRIAL SLIP-UP"; and "JUDGE FINES 2 DENVER LAWYERS $150 ON LACK OF PRE-TRIAL PLANS." At the time of these publications the only order of record was that some undertermined amount of expenses be paid by the defendants in the action.

It is undisputed that a minute order was entered in the case December 18, 1961, which read as follows:

"At this day Nunc Pro Tunc as of December 15, 1961, IT IS ORDERED BY THE COURT that Attorneys for

Defendant pay into the Registry of the Court $150.00 to be turned over to the Attorney for the Plaintiff."

It is admitted that no notice was given to either of the petitioners that the entry of such an order was to be made. On December 15, 1961, Mr. Littell was told, "to draw up an expense account for your services and whatever expenses you have incurred on this hearing this morning and submit it to this Court and it is going to be paid by *these defendants*." The only "defendants" before the Court were the defendants in the action. No notice or hearing of any kind was held on any "expense account" which might have been submitted to the Court by Littell on which a judgment could have been entered against the "defendants," even assuming that the Court had the authority to enter such a judgment after a hearing on the claim for "expenses." The order "nunc pro tunc" was a decree directed against the attorneys who were given no notice of any kind concerning the action of the respondent judge, and first learned that they had been "fined" by the newspaper accounts above referred to. It appears that the parties to the action were close to a settlement of the controversy when the foregoing events took place.

In response to the rule to show cause the respondent Judge Keating incorporates the affidavit of Mr. Littell which contains the following pertinent statements:

"12. That since the pre-trial conference of December 15, 1961, counsel for plaintiff and counsel for defendants have entered into and agreed upon a compromise settlement of this action and have signed a Stipulation for Dismissal and both the plaintiff and his wife have executed releases. That this affiant has agreed to waive any claim to the $150.00 attorney's fee previously assessed by the Court against the defendants' attorneys and in behalf of the plaintiff's attorney, subject to the approval of Judge Keating of said stipulation.

"13. That this affiant, in behalf of the plaintiff, and Attorney John E. Walberg, in behalf of the defendants

and Attorneys Darwin D. Coit and Thomas C. Chapin, appeared before Judge Keating on January 16, 1962, for the purpose of presenting the aforesaid stipulation. * * * A stipulation prepared by counsel for defendants to set aside, dismiss, vacate and hold for naught the order of Judge Keating requiring that attorneys for the defendants pay into the registry of the Court $150.00 to be turned over to the attorney for the plaintiff was presented to the Court. This affiant at that time advised the Court of the settlement of the case and that counsel for plaintiff would sign this stipulation if it met with the Court's approval. The Court announced that this was not a matter to be stipulated upon between counsel inasmuch as it was a matter which concerned the Court and the attorneys for the defendants."

The reporter's transcript concerning what actually happened on January 16, 1962, with relation to the settlement of the controversy is as follows:

"MR. LITTELL: This case has been compromised and settled insofar as the personal injury claim of the plaintiff is concerned.

"That leaves pending the matter of the order by this Court for payment of $150 attorney's fees to Duane Littell, attorney for the plaintiff, not necessarily as a condition of this settlement; but the plaintiff was approached with reference to that attorney's fees whether or not he would relinquish that in view of the rather substantial settlement being made; and I have agreed to do that. They have handed me a stipulation, together with an order to that effect, which I have advised the attorneys I would sign and agree to, but I felt the matter should be presented to the Court before I signed the stipulation.

"THE COURT: I am not going to approve this order, gentlemen. I am not going to compromise a $150 disciplinary action that was taken by this court against one Mr. Chapin through the settlement of this matter.

"This $150 that was to be paid into the registry of this

court was part of a disciplinary action taken by this Court, and which is set out in the rules. I want this record to fully show that this Court is acting not only under the rules, but in compliance with an order as issued by Judge Horan on or about December 1st, 1961, wherein he stated in that order that if the rules of this court were not complied with, that disciplinary action was going to be taken.

"I don't intend to go into the reasons why this Court took the disciplinary action, because all of that matter is in this file. Now I didn't take that disciplinary action with any thought in mind of permitting these people to come in at a later date and compromise it by virtue of a settlement.

"That $150 fine, or however it is to be termed, was assessed against both Mr. Chapin and Mr. Coit — against Mr. Coit because he was the man who was the attorney of record in this matter on December 8, and sent another lawyer, namely, Mr. Chapin, out of his office, to come over here and to attend this pre-trial conference. And, Mr. Chapin did everything, in my judgment, he could possibly do, to put himself in contempt of this Court; and before, gentlemen, I will approve any order for settlement of this matter, that $150 is going to be paid into the registry of this court. And, I might add right now I am going to enter an order, as of now, that that $150 will be paid into the registry of this court on or before January 17, 1962, at nine a.m. This is all.

"In view of the fact that you are here, apparently, representing Mr. Coit and Mr. Chapin, Mr. Walberg, I am going to ask you now to notify Mr. Coit and Mr. Chapin that that $150 is to be paid into the registry of this court not later than tomorrow morning, January 17, at nine a.m.

"Mr. Littell, in view of the fact that this Court does not have the file in this matter at this time, and the action that has been taken by this Court at this time, I am going to ask you to retain in your possession the

copy of the stipulation and the order that you have handed this Court, and keep said documents until some further action is taken in the matter, if you will please.

"I might further state that the trial date, gentlemen, for this matter, is still in full force."

Following this action by the respondent judge, the petition for relief was filed in this Court by Coit and Chapin, the prayer of which is that the respondent Judge Keating be directed to approve the stipulation for dismissal of the action and for vacation of the order on petitioners to pay into the registry of the Court "$150.00 to be turned over to the attorney for plaintiff," thus terminating the entire controversy.

The district court rules which give rise to the present controversy were adopted by the judges of the second judicial district in February 1961, and became effective March 16, 1961. The pre-trial conference procedures as set forth in these rules contain wide departures from the former practice. It was unquestionably the intention of the judges who adopted the rules to expedite the transaction of the judicial business before them; to cut down unnecessary delays in determining controversies; and to discourage the activities of those in the profession who "drag their feet" and unnecessarily resort to dilatory tactics in the handling of litigation. This is a highly commendable goal, and one that must be achieved if the administration of justice is to be worthy of the confidence and respect of the people. To the extent that the rules of the district courts in the several judicial districts are consistent with the Rules of Civil Procedure adopted by this Court, they will be upheld by us.

We do not mean to infer from anything we have said that petitioners here were or were not "stalling," or employing obstructionist tactics. We only say, for the information of the bar and the judges of the trial courts, that local rules designed and intended to improve the administration of justice, and to upgrade the judicial processes in the eyes of the public at large are to

be encouraged. These endeavors, however, must be within the well-established bounds of due process of law and in conformity with the Rules of Civil Procedure and adjudicated cases. "It is a fundamental principle of justice that a person shall have notice of any judicial proceeding affecting his rights." *Michels v. Clemens,* 140 Colo. 82, 342 P. (2d) 693.

 We can easily conceive of a situation in which conduct of attorneys for litigants in unreasonably obstructing progress in a given case would warrant *appropriate* action by a trial judge which might result in a judgment for contempt of court. If such conduct amounts to a direct contempt committed in the presence of the court it may be handled summarily as a contempt matter, but the record with reference to the matter allegedly constituting the contempt must show with particularity what actually happened, and if the matter is thus summarily handled it must be handled as a contempt matter. In the instant action the matter was not handled as is necessary in a contempt matter, at any stage in the proceedings. The first indication, disclosed by the record, that proceedings bordering on a judgment for contempt of court was within the contemplation of the respondent judge, appears to have been announced by the trial court on the 16th day of January 1962 — a full month after the entry of the so-called "judgment" against the defendants in the action. At that time all controversy between the litigants and their attorneys had been amicably settled. The trial judge, not having conducted any appropriate proceedings which could warrant a judgment for contempt, and no judgment for contempt having been entered by him in the entire proceeding, could not thereafter make a disciplinary proceeding out of a transaction which had been conducted as something of an entirely different nature. The statement of the respondent judge, constituting the first utterance on his part remotely dealing with contempt of court, was the following from the bench on January 16,

1962: "I am not going to approve this order, gentlemen. I am not going to compromise a $150 disciplinary action that was taken by this court against one Mr. Chapin through the settlement of this matter."

Suffice it to say that no "disciplinary action" ever was taken by the Court against either Chapin or Coit. We have read the full transcript which the reporter certified to be full and complete, and have examined the exhibits and conclude that from the record before us it does not appear that a direct contempt of court was committed by Mr. Chapin. Certainly no direct contempt was committed by Mr. Coit. It may be that upon a citation to show cause why some specific conduct referred to in the citation should not be held to be a contempt of court, matters which do not appear in the transcript before us would develop and justify a different result. This however is pure speculation. Contempt matters must be adjudicated in *appropriate* proceedings. No *appropriate* proceedings in contempt have been conducted in this case.

The rule is made absolute and the respondent district court, and the Honorable Edward J. Keating, as judge thereof, is directed to dismiss the action in accordance with the stipulations of the parties.

MR. CHIEF JUSTICE DAY not participating.