In the Matter of the Petition of: FIRST INTERSTATE BANK OF DENVER, N.A. As Trustee for Adams County, Colorado Health Facilities Revenue Bonds (Montclair Manor Project) for instructions.

MONTCLAIR TOWERS, LTD., a Colorado Limited Partnership; William K. Strickfaden; Strickfaden Associates, Inc.; Western National Management Co., a Colorado corporation; Marguerite P. Bennett; Paul F. Catterson; Ronald D. Catterson, Catterson Trust, R.D. Catterson, Trustee; O.R. Crawford; Dolan and Martha Jordan; Loeckle & Co., P.C., Jerry I. and Carol Lubell; Peter and Martha Edmiston; Frances G. Strickfaden; Maxine J. Tower; Walter E. and Ann S. Ware; and Hazel Pierce Williams, Appellants,

v.

FIRST INTERSTATE BANK OF DENVER N.A. and Good Shepherd Health Facilities, Inc., Appellees.

No. 86CA1490.

Colorado Court of Appeals,
Div. V.

Dec. 1, 1988.

Pryor, Carney & Johnson (on the briefs), A. Craig Fleishman, Elaine A. Menter, Mary E. McPherson, Englewood, for appellants.

Holland & Hart, John S. Castellano, Denver, for appellee First Interstate Bank of Denver, N.A.

Yu, Stromberg & Huotari, Peter B. Nagel, Wallis S. Stromberg, Denver, for appellee Good Shepherd Health Facilities, Inc.

FISCHBACH, Judge.

Series B bondholders of certain Colorado Health Facilities Revenue Bonds, consisting of Strickfaden Associates, Inc., Montclair Towers, Ltd., (Montclair), and Montclair's general and limited partners, appeal the order of the probate court granting the petition of First Interstate Bank of Denver (trustee) to release security interests held for the benefit of the Series A and Series B bondholders, and to cancel the Series A and Series B bonds. We affirm.

This controversy arises from the sale of a nursing home by Montclair to Good Shepherd Health Facilities, Inc. (Good Shepherd). The purchase price of the nursing home was financed by the issuance by Adams County of $9,000,000 Series 1983–A bonds and $3,000,000 Subordinated Series 1983–B bonds. The Series A bonds were sold to the general public and the Series B bonds were taken back by Montclair as part of the sale price. The bonds were secured by a mortgage of the real property and security interests in other assets of the nursing home. Trustee was appointed pursuant to the municipal revenue bond trust indenture.

Good Shepherd defaulted on payments due on the bonds and proposed a refinancing plan insured by the Department of Housing and Urban Development (HUD) which required that all security held by the trustee be released and the bonds be cancelled. The refinancing would generate sufficient funds to pay off the Series A, but not the Series B bonds.

The trustee petitioned the probate court for instructions, including approval of the release of security and cancellation of the bonds, to enable the refinancing to go forward. After a hearing, the probate court granted the trustee's petition, and ordered the trustee to proceed with the closing of the HUD-insured financing, which necessitated the release of all security held by the trustee, the discharge of the mortgage and loan agreement, and the cancellation of the Series A and Series B bonds.

I

Contending that the bonds were not included within the scope of the trust, Montclair claims that the probate court did not have subject matter jurisdiction to cancel the bonds. We do not agree.

The probate court has jurisdiction to determine "every legal and equitable question arising out of or in connection with express trusts." Section 13–9–103(5), C.R.S. (1987 Repl.Vol. 6A). Its legal and equitable powers are coextensive with those of the district court. Section 13–9–102, C.R.S. (1987 Repl.Vol. 6A). The subject matter of the trust indenture includes the security for the bonds; its specific provisions address, e.g., authorization for issuance of the bonds, source of payment, enforcement. The trustee has authority to recommend, and the probate court jurisdiction to order, cancellation of the bonds.

II

Montclair next contends that the probate court order violates the express terms of

the trust indenture and is therefore an abuse of discretion and invalid. We disagree.

One of the provisions of the trust indenture relied upon by Montclair reads in pertinent part:

"Additional Bonds are hereby authorized to be issued hereunder for the purposes set forth in Section 4.2 of the Agreement. However, no Additional Bonds shall be issued prior to the full payment or defeasance of the Subordinated Series 1983–B Bonds unless such Bonds are issued to pay or defease the Subordinated Series 1983–B Bonds. If the Corporation requests the issuance of Additional Bonds, it shall file with the County and the Trustee a certificate specifying the amount of Additional Bonds to be issued and the purposes for such issuance."

We cannot agree with Montclair's contention that this section prohibits the trustee from diluting the security of the Series B bondholders in the process of refinancing the project. The section offers a very specific and limited protection for the Series B bondholders. A review of the trust indenture indicates that the narrow purpose of the quoted provision is to prohibit issuance of additional bonds which would be on a parity with Series A bonds, and thus subordinate Series B bonds to an amount greater than $9,000,000. Because the refinancing ordered by the probate court maintains the same priority of the Series B bonds in relation to the Series A bonds, it cannot be interpreted as a bond issuance, and § 2.09 affords Montclair no protection against it.

Nor does the section of the indenture cited by Montclair which lists possible remedies in the event of default preclude the refinancing. The language of the indenture makes clear that that list of remedies is inclusive rather than exclusive. It states: "Each and every such right or remedy shall be cumulative and in addition to any other right or remedy given hereunder or now or hereafter existing at law or in equity or by statute." Thus, the trustee is not limited to the remedies listed in the indenture.

Without a court order, the trustee may exercise powers not specifically conferred or forbidden by the trust as are necessary or appropriate to carry out the purpose of the trust, Restatement (Second) of Trusts § 186(b) (1959), and is under a duty to the beneficiary in administering the trust to exercise such care and skill as a person of ordinary prudence would exercise in dealing with his own property. Restatement Second of Trusts § 174 (1959). Thus, consistent with the bond provision, when a remedy listed in the indenture would be less prudent than an unlisted one, the trustee's duty is to pursue the latter.

We recognize that there are other sections of the trust, not referred to by Montclair, that prohibit the trustee and A bondholders from amending the indenture so as to incur additional indebtedness on a parity with that to the A bondholders, to change the terms of payment, or to deprive the bondholders of their outstanding liens. However, in our view, these sections do not bar the refinancing. If interpreted to apply to default situations, these provisions would create an internal inconsistency in the indenture. Because a default as existed in this case makes full payment to all bondholders impossible, a remedy on default, whether one specifically listed in the indenture or one "existing at law or in equity," would frequently lead to one of these "forbidden" results.

Whenever possible, different provisions in a contract should be construed in a manner to harmonize and give effect to all of them. *Broderick Wood Products Co. v. U.S.*, 195 F.2d 433 (10th Cir.1952); *Gardner v. City of Englewood,* 131 Colo. 210, 282 P.2d 1084 (1955). Here, these additional trust provisions apply only to amendments to an ongoing indenture, not to remedies in event of default. This conclusion is supported not only by the language in the sections themselves, which refer to "amendments or modifications," and the internal contractual inconsistency that would result from extending the sections to apply in event of default, but also by explicit language in the indenture article concerning default remedy be applied "to pay-

ment of principal and interest on the Parity [A] bonds first and then to Subordinated Series 1983–B Bonds." By using this language, the drafters clearly foresaw, and the B-bondholders accepted, the risk that there would be insufficient funds to satisfy their liens in event of default.

■ However, even if refinancing were a deviation from the express terms of the trust, the probate court has the authority to order the trustee to pursue it. The probate court has the power to authorize actions not expressly within, or even forbidden by, the terms of the trust if necessary to accomplish the purpose of the trust. *Carroll v. Carroll,* 464 S.W.2d 440 (Tex. Civ.App.1971); *In re Kourbage's Estate,* 52 Misc.2d 15, 274 N.Y.S.2d 762 (1966); Restatement (Second) of Trusts § 167 (1959), 3. A. Scott, *Trusts* § 190.4 (3rd ed. 1967); *see Matter of Will of Killin,* 703 P.2d 1323 (Colo.App.1985); § 13–9–103(5) C.R.S. (1987 Repl.Vol. 6A); § 15–1–306 C.R.S. (1987 Repl.Vol. 6B).

The purpose of the trust indenture was to maximize the return primarily of the Series A, and secondarily, of the Series B, bondholders. This subordinate status was expressly agreed to by the B bondholders. The instrument specifically directs the trustee, when determining an appropriate remedy for default, to consider the interests of the Series A, and not the Series B, bondholders:

> "[A]ny discretionary action taken by the Trustee shall be taken after considering the resulting benefits to the holders of only the Series 1983–A Bonds and that the Trustee has no duties or responsibilities to the holders of the subordinated Series 1983–B Bonds other than set forth herein...."

The probate court, after several days of hearing, determined that HUD-insured financing was the only option available under the circumstances. The court concluded that the trustee acted in a "reasonable and prudent manner" and had "no realistic alternative" but to release the mortgage and security interests held for the benefit of the Series A and Series B bondholders, and to cancel both Series A and Series B bonds.

The probate court's determination to allow the refinancing was within its authority and well supported by the evidence. At the time the trustee brought its petition, the nursing home was in default and reserve funds were depleted. The Internal Revenue Service had levied upon Good Shepherd's Medicaid and Medicare accounts receivable for unpaid taxes, and the Colorado Department of Health had threatened to close down the nursing home and move the residents to other facilities. Good Shepherd had attempted unsuccessfully to find a buyer. Another payment was due on the bonds; interest was accruing at $3,500 per diem on the Series A bonds and $1,060 per diem on the Series B bonds. The trustee examined the alternative of foreclosure and had rejected it on the basis that less money would be realized by that approach. The B bondholders had had the opportunity both to buy the facility and to submit their own refinancing proposal. They did not offer to buy and the court found that their refinancing proposal could not be realized. There was not enough money available through HUD's commitment fully to pay off Series A and B bondholders and HUD required clear title before it would refinance.

■ The probate court's finding that the trustee had explored all other alternatives in an effort to maximize payment to both classes of bondholders and had determined that refinancing was the only viable alternative to accomplish the purpose of the trust is supported by substantial evidence. Hence, there was no abuse of discretion by the probate court and we will not disturb its order on appeal. *See Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust,* 674 P.2d 997 (Colo.App.1983).

### III

Montclair argues that the probate court order does not cancel any underlying indebtedness arising from the sale of the nursing home to Good Shepherd. Trustee and Good Shepherd agree, and having reviewed the record, so do we.

## IV

Montclair's limited partners appeal on the ground that they failed to receive timely notice of the hearing and were therefore deprived of due process of law. They assert that they could not meaningfully participate in the hearing because their attorney had been retained only a few days earlier. We perceive no denial of due process.

### A.

■ The parties agree that proper and timely notice of the hearing was served on William Strickfaden, and counsel entered its appearance for Strickfaden Associates.

The trust indenture provides that the person in whose name the bond is registered is the "absolute owner for all purposes." The record reveals that Strickfaden Associates was the record owner of the bonds. Therefore, it was the only party entitled to receive notice. The probate court correctly noted that whether notice was or was not conveyed from Strickfaden Associates, as record title holder, to Montclair's limited partners, was a "purely collateral matter."

■ In addition, because of the illness of William Strickfaden, the hearing was actually continued several times. The limited partners thus had adequate time to prepare for and participate in the proceedings.

### B.

Limited partners also argue that the notice of the hearing inadequately informed them of the possibility that cancellation of the bonds would be considered.

■ Notice of probate proceedings must adequately inform interested parties of the issues that may be decided. *Michels v. Clemens,* 140 Colo. 82, 342 P.2d 693 (1959). A final order exceeding the bounds of the notice given violates due process. *See Estate of Jenanyan,* 31 Cal.3d 703, 183 Cal.Rptr. 525, 646 P.2d 196 (1982).

■ The record here, however, reflects that the notice stated: "[S]uch interest you may have or claim with respect to the Series [1983–B] Bonds may be adversely affected." This constituted adequate notice of the possibility that the bondholders' interests might be compromised.

JUDGMENT AFFIRMED.

PLANK, J., concurs.

VAN CISE, J., concurs in part and dissents in part.

VAN CISE, Judge, concurring in part and dissenting in part:

I agree with the majority as to Parts III and IV. The probate court order did not discharge the underlying obligation running from Good Shepherd to Montclair. Also, Montclair and, through it, the limited partners received adequate and timely notice of the hearing on the trustee's petition. Also, I agree with the majority's conclusion in Part I that the probate court has subject matter jurisdiction in this action.

The primary issue on this appeal, however, is not whether the probate court had jurisdiction. It is whether it was correct in cancelling the B bonds.

I disagree with the majority's conclusion in Part II that "[t]he probate court's determination to allow the refinancing was within its authority."

"There is no firmer principle in the common law of trusts than that requiring the trustees to act only in accordance with the terms of the trust." *Sinai Hospital of Baltimore v. National Benefit Fund,* 697 F.2d 562 (4th Cir.1982). *See also Matter of Will of Killin,* 703 P.2d 1323 (Colo.App. 1985); *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 281, 697 P.2d 674 (1985). As stated in Restatement (Second) of Trusts § 186 (1959):

"[A] trustee can properly exercise only such powers as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust *and are not forbidden by the terms of the trust.*" (emphasis supplied)

The trustee may not alter the terms of the trust instrument to the detriment of a

beneficiary without his consent. *Hoffa v. Fitzsimmons,* 673 F.2d 1345 (D.C.Cir.1982).

The rights and remedies of the parties in the event of a default on the bonds are spelled out in § 8.02 of the indenture. These are that, upon default, the trustee shall have the following rights and remedies: (a) to accelerate payment of the principal and outstanding interest due on the bonds, (b) to require Good Shepherd to surrender to the trustee actual possession of the physical facilities, (c) to file for appointment of a receiver, (d) to foreclose on all or any portion of the land and building and to exercise all the rights and remedies of a secured party under the Colorado Uniform Commercial Code, and (e) to sue for and recover judgment on the bonds. The trustee may also proceed under existing legal, statutory, or equitable remedies, but there are no such theories which would support the "remedy" granted by the court here.

The indenture also provides, on pages 3 and 4 and pages 10 and 11, that no additional bonds or indebtedness on a parity with the A bonds shall be issued prior to the full payment or defeasance of the B bonds unless such additional bonds or indebtedness are incurred to pay or defease the B bonds. The proposed HUD guaranteed refinancing, the proceeds of which will not be used to pay off the outstanding B bonds is, therefore, impermissible.

The indenture further specifies, in § 10.02, that:

"[W]ithout the consent of the holders of all the bonds at the time outstanding, nothing herein contained shall permit, or be construed as permitting:

"(a) ... [A] reduction of the principal amount of ... any bond;

"(b) The deprivation of the holder of any bond then outstanding of the lien created by this indenture...."

It also states, on pages 6 and 13, that no modification or amendment of the indenture "shall be made which will affect the terms of payment of the principal of ... any of the bonds ... unless consented to by all bondholders."

The express provisions of the trust indenture here preclude the entry of the order of the probate court insofar as it directs the release of all security held by the trustee under the mortgage and loan agreement, the discharge of that agreement, and the cancellation of the B bonds. The order should be reversed.